824 P.2d 771

**TRIPLE E PRODUCE CORP.,**
**a Delaware corporation,**
**Plaintiff/Appellee,**

v.

**Edgar VALENCIA, dba Engebretson–Grupe, Co., Garnishee/Appellant.**

**No. 2 CA–CV 90–0290.**

Court of Appeals of Arizona,
Division 2, Department A.

Sept. 24, 1991.

Review Denied March 3, 1992.*

* Zlaket, J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Larson & Soto by E. Leigh Larson and James A. Soto, Nogales, for plaintiff/appellee.

Johnson, Dowdall & Kleindienst, P.A. by Richard J. Dowdall and Richard G. Kleindienst, Tucson, for garnishee/appellant.

## OPINION

HOWARD, Judge.

This is an appeal from a judgment in the sum of $1,519,865.33 against the garnishee, entered after a trial by the court. The garnishee, Edgar Valencia, dba Engebretson–Grupe Co. (Valencia), contends the trial court erred because the renewal judgment which formed the basis of the garnishment action was void and because Valencia was not indebted to the judgment debtor. We do not agree and affirm.

### I.

The defendants in the original breach of contract action included Ramiro Castro Soto, a farmer growing produce in Guasave, Mexico, and other members of his family. They shall be referred to collectively as Castro. Both Valencia and Triple E Produce Corp. (Triple E) are distributors of agricultural produce. Triple E and Castro entered into two contracts whereby Castro agreed to ship all of his produce to Triple E for sale and distribution in the United States. On May 2, 1980, Triple E sued Castro for breach of contract after Castro started sending his produce to Valencia instead of Triple E. In conjunction with this suit, Triple E, on May 2, May 16, May 23 and June 2, 1980, served Valencia with writs of garnishment.

The four answers Valencia originally filed in response to the writs all stated, in essence, that it did not know if it was indebted to Castro because it had not yet received the money from the buyers to whom it sold Castro's produce and it would not know what, if anything, it owed Castro until there had been a final accounting liquidation. Subsequent to the filing of these answers, Valencia amended them by stating that it was mistaken and that it never received any produce from Castro and was not indebted to him. Triple E controverted each of Valencia's answers.

On February 3, 1983, judgment was entered against Castro in the breach of contract action. On February 1, 1988, Triple E filed a judgment renewal affidavit which reflected that 21 payments in the total amount of $134,280.58 had been made on the judgment and stated that the exact amount due was $2,329,637.45, $1,640,337.43 against Castro and the balance against other persons not involved in the garnishment proceeding.

Triple E had received an additional payment of $540,000, which it inadvertently omitted from the renewal affidavit, and on September 20, 1989, it filed an amended affidavit, which listed the omitted payment and stated that the balance was $1,519,865.33 after the omitted amount was deducted. Valencia knew the $540,000 had been omitted and was not detrimentally misled or prejudiced by the omission.

The trial on the garnishment issue eventually took place and, according to the findings of fact made by the trial court, Castro did, in fact, ship produce to Valencia. The shipments were made by and on behalf of Castro in the names of various other individuals collectively called the Guasave Grupe. Under the arrangement between Valencia and Castro, Valencia was to deduct Valencia's cost, advances and commissions from the proceeds of the sale of the produce and the amount remaining, if any, was to be paid to Castro. Valencia sold Castro's produce in the United States and Canada on consignment. It also advanced various costs and expenses as to the Guasave Grupe produce and its sale. Subsequent to April 15, 1980, Valencia, after deducting its commissions, "advanced" funds to members of the Guasave Grupe based upon its accountant's estimate of the amounts of accounts receivable in Valencia's sales journal from sales of produce from the Guasave Grupe as a whole. Most of the funds so advanced were advanced after Valencia had been served with the writs of garnishment.

The advances to individual Guasave Grupe members were without regard to the identity of the named consignor of the individual shipments of the Guasave Grupe produce. And in Valencia's books and records, individual accounts were not maintained for each of the individual members of the Guasave Grupe, Valencia treating the Guasave Grupe shippers, sales and accounts as one account. The produce received by Valencia under the names of the various members of the Guasave Grupe was actually that of Castro.

Valencia did not wait until the end of the 1979–80 growing season to enter into a liquidation and settlement of accounts regarding the Guasave Grupe produce but instead made partial liquidations from time to time as the produce was sold, most of which partial liquidations occurred after the service of the writ of garnishment. The liquidations were as to the Guasave Grupe as a whole, without regard to the identities of the individually named shippers. While the writs of garnishment were in effect, Valencia paid to Castro, or to their agents, amounts aggregating more than $2,800,000.

In its conclusions of law the trial court concluded that Triple E's judgment against Castro was validly renewed, that the members of the Guasave Grupe were the agents of Castro and that payments by Valencia to the members of the Guasave Grupe were to be treated as payments to Castro, that the sales of produce received from the Guasave Grupe were made by Valencia as agent for Castro and that the accounts receivable resulting from these sales belonged to Castro. The court further found that at the time of the serving of the writs of garnishment, Valencia was indebted to Castro or was holding accounts receivable which were Castro's property in the following amounts: May 2, 1980, $613,329.61; May 16, 1980, $840,416.38; May 23, 1980, $684,882.87; and June 2, 1980, $656,894.73.

## II.

In Arizona a judgment creditor may renew his judgment by an affidavit of renewal filed within 90 days preceding the expiration of five years from the date the judgment was entered. A.R.S. § 12–1612(A) and (B). Pursuant to A.R.S. § 12–1612(B) the renewal affidavit must set forth:

1. The names of the parties, the name of the court in which docketed, if recorded the name of the county in which recorded, the date and amount of the judgment, the number and page of the docket in which entered by the clerk of the court, if recorded, the number and page of the book in which recorded by the county recorder, the name of the owner of the judgment, and his source and succession of title, if not the judgment creditor.

2. That no execution is anywhere outstanding and unreturned upon the judgment, or if any execution is outstanding, that fact shall be stated.

3. The date and amount of all payments upon the judgment and that all payments have been duly credited upon the judgment.

4. That there are no set-offs or counterclaims in favor of the judgment debtor, and if a counterclaim or set-off does exist in favor of the judgment debtor, the amount thereof, if certain, or, if the counterclaim or set-off is unsettled or undetermined, a statement that when it is settled or determined by action or otherwise, it may be allowed as a payment or credit upon the judgment.

5. The exact amount due upon the judgment after allowing all set-offs and counterclaims known to affiant, and other facts or circumstances necessary to a complete disclosure as to the exact condition of the judgment.

Because the recorded judgment is a statutory lien on the non-exempt real property of a judgment debtor, see A.R.S. § 33–964(A), it has been held that the statutory requirements must be followed strictly in order that a judgment be renewed. See *Fay v. Harris*, 64 Ariz. 10, 164 P.2d 860 (1945) and *Serasio v. Sears*, 58 Ariz. 522, 121 P.2d 639 (1942). The detailed informational requirements of A.R.S. § 12–1612(B) serve the purpose of informing persons

who may be interested in the real property as to the exact condition of the judgment on the date it was renewed.

■ The question which we must answer is this: if an error is made on the affidavit relative to the balance due on the judgment, does this error prevent the judgment from being renewed?

In *Fay v. Harris,* supra, it was contended that the affidavit of renewal was defective because the balance which was shown to be due and owing was incorrect. The court held that the statute had been complied with because the exact balance could be determined from the face of the affidavit. We note from the facts in *Fay* that this determination could only be made if the person examining the affidavit had some legal or special knowledge as to which items on the affidavit were correctly computed or taken into account. We do not believe, however, that the court in *Fay* intended to set out an immutable rule that an error in the computation of the balance is excusable only if the correct amount can be ascertained from the face of the affidavit. Clearly the intent of the statute is to give the judgment creditor the right to renew his judgment for the amount that is actually due and owing. We hold, therefore, that where the amount of the balance is incorrectly overstated because of an inadvertent failure to credit a payment made on the judgment, the judgment is then renewed only in the correct amount and, under such circumstances, any interested party would have the right to correct the judgment on motion and after notice, or the court would have the right to correct the judgment on its own motion. See Ariz. R.Civ.P. 60(a), 16 A.R.S., and *Fay v. Harris,* supra.

We conclude that the trial court did not err in concluding that the judgment was validly renewed in the amount actually due and owing.[1]

### III.

■ Valencia contends the trial court erred in awarding judgment against it because the grower-distributor relationship does not allow garnishment prior to final liquidation. Valencia had claimed at trial that it was its custom and practice to advance the cost of planting, growing, packing and transporting the produce over the growing season. These advances are secured by the proceeds from the future sale of the produce. When it sells the produce it pays itself a commission and credits the remainder over the course of the growing season. At the end of the season the account is liquidated. Any proceeds remaining after advances, expenses and commissions are paid to the grower. In light of that custom and practice, Valencia claims it owed nothing to Castro prior to the final liquidation, which had not occurred when the writs of garnishment were filed. We do not agree.

■ Indebtedness due is subject to garnishment if the payment thereof is not contingent on the occurrence of any act or event. *Weir v. Galbraith,* 92 Ariz. 279, 376 P.2d 396 (1962).

■ The trial court, in written findings of fact, found that contrary to Valencia's version of its ordinary custom and practice, with regard to Castro, Valencia did not wait until the end of the growing season to settle and liquidate its accounts but, instead, made partial liquidations from time to time as the produce was sold. It further found that after the writs of garnishment were in effect the garnishee paid to the defendant or its agents more than $2,800,-000.[2] The trial court also found that at the time of the service of the writs of garnishment, Valencia owed Castro the substantial amounts which we have previously set forth in our recitation of the facts. These amounts included accounts receivable belonging to Castro, which Valencia held as Castro's agent, making them subject to garnishment. See *Bata Shoe Co. v. Silves-*

---

1. In view of our disposition of this issue, we need not decide the effect of the filing of the corrected renewal affidavit.

2. This finding is listed as a conclusion of law but it is in reality a finding of fact and we treat it as such.

*tre Segarra E. Hijos*, 58 A.D.2d 133, 396 N.Y.S.2d 369 (1977).

Our review of the trial court's findings of fact is limited to a determination of whether such findings are clearly erroneous. *E.W. McMahon v. Fiberglass Fabricators, Inc.*, 17 Ariz.App. 190, 496 P.2d 616 (1972). We find substantial evidence to support the trial court's findings. The garnishee who disposes of assets after the service of the writ does so at his own peril. A.R.S. § 12–1578(A) and *Mid–State Electric Supply Co. v. Arizona Title Insurance and Trust Co.*, 105 Ariz. 321, 464 P.2d 604 (1970). We agree with the trial court's conclusion that Valencia is liable to Triple E for the funds disbursed to Castro up to the amount of Triple E's judgment.

## IV.

Valencia contends that Triple E did not meet its burden of proof in regard to the question of whether Castro shipped produce to Valencia. Castro stated that they did not ship anything to Valencia and did not receive any money from Valencia. It was Castro's position at trial that there was no relationship between Castro and the individuals who received the money from Valencia. Valencia ignores and makes no reference to the trial court's finding of fact No. 13, which states:

Defendants thereafter proceeded to ship produce to garnishee. Said shipments were made by or on behalf of defendants in the names of various other individuals collectively called the "Guasave Group."

We repeat what we previously stated; our review is limited to a determination of whether the findings of the trial court are clearly erroneous. *E.W. McMahon v. Fiberglass Fabricators, Inc.*, supra. The record contains substantial evidence supporting this finding by the trial court and we shall not disturb it.

Affirmed.

LIVERMORE, C.J., and LACAGNINA, P.J., concur.