3 P.3d 1033

**J.C. PENNEY, Plaintiff–Appellee, Cross–Appellant,**

v.

**Jay LANE and Mina Lane, husband and wife, Defendants–Appellants, Cross–Appellees.**

**No. 1 CA–CV 99–0095.**

Court of Appeals of Arizona, Division 1, Department E.

Nov. 26, 1999.

Aron & Associates, P.C. by Peter M. Balsino, Esther B. Simon, Tucson, for Appellee/Cross–Appellant.

Thaddeus G. Baker, Jr., Flagstaff, for Appellants/Cross–Appellees.

## OPINION

GRANT, Judge.

¶ 1 Two issues are presented in this appeal and cross appeal: (1) Because of amendments to Rule 77(g), Arizona Rules of Civil Procedure, and Rule 9(a), Arizona Rules of Civil Appellate Procedure, did the trial court lack discretion under the facts presented to vacate and reenter an order pursuant to Rule 60(c)(6), Arizona Rules of Civil Procedure, to allow an appeal that otherwise would have been untimely? (2) Assuming that we uphold the decision to vacate and reenter the order, did the trial court err in determining that pursuant to its interpretation of relevant statutes, the filing of an affidavit of renewal of judgment in the Maricopa County Superior Court was effective to renew a judgment of the Coconino County Superior Court? We are asked to decide whether the trial court erred by allowing renewal of a judgment after the expiration of the statutory period, and whether the judgment renewal must be in the superior court of the county where the judgment was first obtained. But before we reach that issue we must decide whether the trial court lacked discretion under Rule 60(c)(6), Arizona Rules of Civil Procedure, to allow an appeal that otherwise would be untimely. We hold that no error and no abuse of discretion occurred in the trial court's decision to vacate and reenter the judgment.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On June 1, 1992, J.C. Penney ("Penney") was awarded a default judgment in the amount of $1,878.18 against Jay and Mina Lane ("the Lanes") in the justice court for Page, Arizona. Penney recorded the judgment with the Coconino County Recorder's Office on October 15, 1992, in Docket 1513, Page 488. In May of 1996, Penney transferred the judgment to the Coconino County Superior Court in order to employ execution methods to try to collect on the judgment. The judgment was assigned Coconino County Superior Court case number T 1265.

¶ 3 Within ninety days prior to the expiration of the statutory five-year period from the date of entry of judgment, Penney's attorney's office prepared an affidavit for renewal of judgment, pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–1612. By mistake, the affidavit referred to the judgment as a Maricopa County judgment rather than a Coconino County judgment, stated that the judgment was recorded in the Office of the Maricopa County Recorder rather than the Coconino County Recorder, and named the Maricopa County Superior Court in its caption instead of Coconino County Superior Court. Although the affidavit was timely filed on May 5, 1997, it was filed in Maricopa County Superior Court instead of Coconino County Superior Court. These mistakes were not detected for several months, and, as a consequence, no affidavit of renewal was filed in the Coconino County Superior Court within the ninety days preceding the expiration of five years from the date of entry of the judgment as required by A.R.S. section 12–1612 to keep the judgment enforceable pursuant to A.R.S. section 12–1551(B).

¶ 4 On June 19, 1998, Penney filed a motion in the Coconino County Superior Court, asking that its affidavit of renewal of judgment be entered in its records *nunc pro tunc* to May 5, 1997. The Lanes opposed the motion arguing that the judgment became unenforceable when Penney failed to file a timely affidavit of renewal of judgment in the correct county of the superior court. The trial court granted the motion, concluding that the error was not fatal. The trial court explained in the judgment:

> NOW, THEREFORE, the Court finds that there is only one Superior Court in the State of Arizona and that although the Affidavit of Renewal was filed in Maricopa County rather than Coconino County, the court of issuance of the judgment, such error is merely a venue error, therefore
>
> IT IS ORDERED granting the Motion to Enter Affidavit of Renewal of Judgment.

¶ 5 The Lanes intended to appeal from the trial court's ruling after a final, appealable order was entered in the case. Their attor-

ney communicated that intention to Penney's attorney, asking him to prepare a formal order. After learning that Penney's attorney did not intend to prepare an order, the Lanes' attorney prepared one. Because the Lanes' motion for reconsideration was pending, their attorney sent the form of order with a letter to the trial court asking that the order be entered after the court ruled on the motion for reconsideration.

¶ 6 The trial court denied the motion for reconsideration on November 27, 1998. On December 3, 1998, the Lanes' attorney checked on the status of the order lodged with the court. Counsel learned for the first time that the trial court had signed and entered the order he had lodged with it on September 11, 1998, but that the clerk's office had failed to send out any notice of the entry of judgment.

¶ 7 The Lanes quickly filed a motion on December 7, 1998, to vacate and reenter the order pursuant to Rule 60(c)(6) of the Arizona Rules of Civil Procedure. The trial court granted the motion over Penney's opposition, and reentered its order on January 13, 1999.

¶ 8 The Lanes filed a timely appeal from the reentered order. Penney filed a timely cross-appeal, objecting to the trial court's reentry of the order to allow the Lanes to timely appeal.

## STANDARD OF REVIEW

¶ 9 The Lanes' appeal centers upon an issue of statutory interpretation. Penney's cross appeal questions the effect of the amendments to certain rules of court. Because these are issues of law, we review them *de novo. See Hawkins v. State Dep't of Econ. Sec.*, 183 Ariz. 100, 103, 900 P.2d 1236, 1239 (App.1995).

## CROSS APPEAL

■ ¶ 10 The threshold issue is whether the trial court erred in determining it had discretion to grant the Lanes' request for relief pursuant to Rule 60(c)(6) of the Arizona Rules of Civil Procedure, vacating and reentering its previous order to allow the appeal, which otherwise would have been un-

timely. Penney argues that the 1994 amendments to Rule 77(g) of the Arizona Rules of Civil Procedure and Rule 9(a) of the Arizona Rules of Civil Appellate Procedure—which deal with the effect that failing to receive notice of the entry of judgments and orders has on the time for appeal—precluded the trial court from granting the Rule 60(c)(6) relief requested by the Lanes. To decide this question, we must examine what the relevant law was previously.

¶ 11 Prior to its 1994 amendment, Rule 77(g) provided, in relevant part: ;

The clerk shall mail copies of all minute entries to all parties. Immediately upon the entry of a judgment as defined in Rule 54(a), the clerk shall mail a notice of the entry of judgment stating the date of entry, in the manner provided for in Rule 5, to every party who is not in default for failure to appear, and shall make a record of the mailing. *Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed.*

(Emphasis added.) Rule 9(a) of the Arizona Rules of Civil Appellate Procedure at that time provided that notice of appeal "shall be filed with the clerk of the superior court not later than 30 days after the entry of the judgment from which the appeal is taken. . . ." The rule contained no provision for extending the time for appeal if a party did not receive notice of the entry of judgment.

¶ 12 In *Vital v. Johnson*, 128 Ariz. 129, 624 P.2d 326 (App.1980), this court was asked to determine whether the language in the last sentence of Rule 77(g), referred to above, left trial courts without authority to vacate and reenter the same judgment in order to begin again the time for filing a notice of appeal when no notice of entry of the judgment had been sent to the party by the clerk. We determined that the language of that rule left a trial court with no authority to do so. *Id.* at 132, 624 P.2d at 329. The Arizona Supreme Court denied review in *Vital.*

¶ 13 Two years later, however, in *Park v. Strick*, 137 Ariz. 100, 669 P.2d 78 (1983), our supreme court accepted jurisdiction of a spe-

cial action challenging the ruling of the trial court that *Vital* precluded it from granting Rule 60(c)(6) relief under similar circumstances, such as when a party seeking to appeal has received no notice of entry of the judgment. The supreme court stated that it accepted the petition in order to examine the decision in *Vital* and the interplay between Rules 60(c) and 77(g).

¶ 14 After examining all the relevant competing principles behind these rules, the supreme court in *Park* held that "Rule 77(g) restricts the power of an Arizona trial court to grant Rule 60(c)(6) relief where the only ground is the failure to give or receive the notice required by Rule 77(g)." *Id.* at 104, 669 P.2d at 82. It further held, though, that the trial court has authority under Rule 60(c)(6) to vacate the judgment and enter a new judgment in order to allow a party to file a timely appeal when the party did not have knowledge from any source that a previous judgment had been entered and when there are "extraordinary," "unique," or "compelling" circumstances. *Id.* The court provided no hard-and-fast rule to determine when such extraordinary circumstances justify relief, but it cited several federal cases as persuasive authority to determine whether unique circumstances warranted relief from judgment. *Id.* at 105, 669 P.2d at 83. The court remanded the case to the trial court for it to consider the merits of the request for Rule 60(c)(6) relief. *Id.*

¶ 15 Concerned that the compelling interest in the finality of judgments not be lightly disregarded, a year later, in *City of Phoenix v. Geyler*, 144 Ariz. 323, 697 P.2d 1073 (1985), our supreme court added some additional requirements for allowing a delayed appeal from a judgment or order. Adopting the more stringent criteria established in *Rodgers v. Watt*, 722 F.2d 456 (9th Cir.1983) (en banc), the court concluded that the following factors must be shown in combination with the compelling circumstances required under Rule 60(c)(6) in such cases: [1]

(1) absence of Rule 77(g) notice;

(2) lack of prejudice to respondent;

(3) prompt filing of a motion after actual notice; and

(4) due diligence, or reason for lack thereof, by counsel in attempting to be informed of the date of the decision.

*See Geyler,* 144 Ariz. at 328, 697 P.2d at 1078.

¶ 16 With the foregoing in mind, we examine the amendments made to Rule 77(g), Arizona Rules of Civil Procedure, and Rule 9(a), Arizona Rules of Civil Appellate Procedure, that became effective in December of 1994. A new sentence was added to Rule 77(g) providing that "[a]ny party may in addition [to the notice of entry of judgment the clerk is required to give] serve a notice of such entry, in the manner provided in Rule 5 for the service of papers." Additionally, and of particular concern to us in this appeal, a new clause was added to Rule 77(g), so that the final sentence of the rule now provides:

Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, *except as provided in Rule 9(a), Arizona Rules of Civil Appellate Procedure.*

(Emphasis added.)

¶ 17 Rule 9(a) of the Arizona Rules of Civil Appellate Procedure, which provides time limits for appeals, was simultaneously amended to allow extension of the time to appeal when the clerk fails to give notice of entry of judgment, but under very limited time constraints and other circumstances. The following sentence was added to the rule:

If the court finds that (1) a party entitled to notice of entry of judgment did not receive such notice from the clerk or any party within 21 days of its entry and (2) no party would be prejudiced, the court may upon motion filed not later than 30 days after the expiration of the time for appeal, or within 7 days of receipt of such notice, whichever is earlier, extend the time for

---

1. Although our supreme court adopted the more stringent criteria set forth in *Rodgers,* it also held that where the proper factual showing is made, delayed appeal may be allowed under any subdivision of Rule 60(c) so long as the proper additional standards for delayed appeal are applied. *See Geyler,* 144 Ariz. at 328, 697 P.2d at 1078.

appeal for a period not to exceed 14 days from the date of the order granting the motion.

ARCAP 9(a).

¶ 18 The Court Comment following both of the above-mentioned rules provides the following explanation for the amendments:

> The 1994 amendment to this rule and Rule 9(a), ARCAP, and Rules 6(a) and 58(a), Rules of Civil Procedure, were designed to address a problem experienced by practitioners, whereby they were not receiving notice of entry of judgment in some cases and their clients' rights to appeal were jeopardized.[2]

Ariz. R. Civ. P. 77(g); ARCAP 9(a).

¶ 19 Penney argues that the effect of the amendments to Rule 77(g) and Rule 9(a) is to take away the trial court's power to grant Rule 60(c) relief in cases in which the failure to receive the clerk's notice of entry of judgment caused the failure to file a timely appeal. Penney argues that Rule 9(a) provides the only relief that can be granted when the clerk's notice was not received, and since the Lanes' motion was not filed within the brief period of time for requesting relief specified in that rule, they are not entitled to any relief that would allow them to appeal.

¶ 20 We disagree with Penney's position and find it is based on an overly-strict reading of the rule. We reach a different conclusion having read the rule in light of the Court Comment and relevant language in *Park*. As previously stated, in *Park* our supreme court said that under no circumstances would the failure to receive notice of entry of judgment from the clerk *by itself* be sufficient to obtain relief allowing a delayed appeal. The failure to receive notice had to occur in conjunction with other compelling circumstances, which obviously would not always exist. The Court Comment states that the rules were amended to address the problem of practitioners not receiving the notice of entry of judgment, jeopardizing their clients' appeal rights. From the foregoing, it is clear that the amendments add to the court's discretion instead of reducing it. Courts have now been given discretion to extend the time for appeal upon a party's showing of the bare failure to receive the clerk's notice without its having to show additionally the compelling circumstances or any other circumstances provided in Rule 60(c), but under the very limited time constraints and other circumstances provided in amended Rule 9(a). There is no reason to conclude that trial courts would not retain full authority under Rule 60(c) to grant relief when other Rule 60(c) grounds and the *Rodgers* criteria are shown in conjunction with the failure to receive notice of entry of judgment from the clerk.

¶ 21 The decision to vacate and reenter judgment is left to the sound discretion of the trial court, so long as this discretion is not exercised in clear violation of the principles announced in *Park. See Davis v. Davis*, 143 Ariz. 54, 59, 691 P.2d 1082, 1087 (1984). We are satisfied from the facts presented in the record, as previously set forth in this opinion, that the *Rodgers* criteria were met in this case. Moreover, the trial court would have been justified in finding that compelling circumstances allowed it to grant relief in this instance in which the Lanes' attorney's correspondence with Penney's attorney and his cover letter to the trial judge accompanying his form of judgment led him to reasonably believe judgment in the case would not be entered until the trial court ruled on the motion for reconsideration. The circumstances shown parallel those shown in *Smith v. Jackson Tool & Die, Inc.*, 426 F.2d 5 (5th Cir.1970), cited in *Park*, as the type of compelling circumstances that might justify relief. *See Park*, 137 Ariz. at 104, 669 P.2d at 82.

¶ 22 For the reasons explained herein, we uphold the trial court's decision to vacate and reenter judgment to allow the Lanes' appeal. We turn now to the issue the Lanes raise in that appeal.

---

**2.** The amendment to Rule 58(a) adds the provision that "[f]orms of judgment should be served upon all parties and counsel."

## APPEAL

¶ 23 Arizona law requires that before property may be levied or sold to satisfy a judgment,

> "a certified transcript of the judgment must be filed in the office of the clerk of the superior court of the county where the judgment was given and entered by the clerk on the appropriate book kept by him. Execution on the judgment shall be issued by the clerk of the superior court."

A.R.S. § 22–246. A justice court judgment may be treated as a superior court judgment upon compliance with the following statutory procedures:

> The clerk of the superior court, upon presentation of a certified transcript of a judgment ... given by a justice or municipal court, shall forthwith file the judgment. The judgment, from the time of filing the transcript thereof, shall be deemed the judgment of the superior court, shall be in the control thereof, and shall be carried into execution in the same manner and with like effect as a judgment of the superior court.

A.R.S. § 33–962(A).

¶ 24 The judgment Penney obtained against the Lanes in the justice court in Page, Arizona, was rightly filed with the Clerk of the Coconino County Superior Court where it was entered in the appropriate records and became a judgment of the Coconino County Superior Court. The issue on appeal is whether Penney did what was needed to renew this Coconino County Superior Court judgment in order to keep it enforceable. The precise question is whether the statutory requirement of filing an affidavit of renewal with the clerk of the "proper court" was met by the filing of the affidavit with the Clerk of the Maricopa County Superior Court.

¶ 25 Under Arizona law, a judgment becomes unenforceable after five years unless action is taken to renew the judgment. As A.R.S. section 12–1551(B) provides, "[a]n execution or other process shall not be issued upon a judgment after the expiration of five years from the date of its entry unless the judgment is renewed by affidavit or process pursuant to § 12–1612. . . ."

¶ 26 Arizona Revised Statutes Annotated section 12–1612(A) requires that the affidavit for renewal be filed "with the clerk of the proper court." The subsection more particularly provides that "[a] judgment for the payment of money which has been entered and docketed in the civil docket or civil order book of the ... superior court, whether originally rendered by it or entered upon a transcript of judgment from another court ... may be renewed by filing an affidavit for renewal with the clerk of the proper court." A.R.S. § 12–1612(A).

¶ 27 A reading of other portions of the renewal of judgment statutes leaves us with no mystery as to what is meant by the "proper court." Section 12–1612(D) provides that "[t]he filing of the affidavit in the office of the clerk of the court where the judgment is entered and docketed shall renew and revive the judgment to the extent of the balance shown due in the affidavit." Then in A.R.S. section 12–1613, subsection (A) of that statute provides that "[t]he affidavit of renewal shall be docketed by the clerk in the proper docket or book, and he shall enter in the proper docket or book forthwith, after the statement of the original judgment, the date and fact of the renewal, and the amount for which the judgment is renewed." Subsection (B) of 12–1613 provides that "[t]he entry and docketing of the affidavit by the clerk shall renew the judgment for a period of five years from the time of docketing." The only conclusion that can be reached from reading these provisions in the renewal of judgment statutes is that the affidavit is to be filed with the clerk of the superior court in the same county in which the judgment was docketed so that it can be maintained with the other records concerning that judgment. It would make no sense for the affidavit to be filed with the clerk of the superior court in a different county who would have no records concerning that judgment.

¶ 28 Penney makes much of the fact that the Arizona Constitution in article 6, section 13, provides that the superior courts have been declared to be "a single court of the state of Arizona." However, our supreme court has recognized that this language does not mean that a judge from one county may

enter orders in a case pending before a judge in another county. *See Ward v. Stevens,* 86 Ariz. 222, 344 P.2d 491 (1959). The supreme court stated that it would not impress upon this constitutional provision such a construction because "[t]o do so would only result in chaos and confusion and in unnecessary jurisdictional conflicts among the trial courts of the state." *Id.* at 230–31, 344 P.2d at 496. So too would uncertainty and confusion about the status of cases reign if we held that legal documents such as affidavits for renewal of judgments could be filed with the clerk of any county of the superior court regardless of whether that county of the superior court has any connection with anything else about the case or judgment involved.

¶ 29 On earlier occasions, we have recognized that one of the purposes for the requirements concerning the affidavit of renewal is to give notice to the judgment debtor and other interested parties of the status of the judgment. *See, e.g., Triple E Produce Corp. v. Valencia,* 170 Ariz. 375, 377–78, 824 P.2d 771, 773–74 (App.1991) (recognizing that the detailed informational requirements of A.R.S. § 12–1612(B) serve the purpose of informing persons who may be interested in the judgment debtor's real property as to the exact condition of the judgment on the date it was renewed); *Weltsch v. O'Brien,* 25 Ariz. App. 50, 53, 540 P.2d 1269, 1272 (1975) (recognizing that one of the purposes of A.R.S. §§ 12–1611 to –1613 is to give notice to the judgment debtor and other interested parties of the identity of the judgment to be renewed).

¶ 30 Under the provisions of the renewal of judgment statutes, judgment debtors and other interested parties are able to check the status of the judgment at five-year intervals following entry of the judgment by checking the records of the superior court clerk's office in the county in which the judgment was recorded. It is not intended that these persons or entities be required to check the court records in all of the other counties of the state to ensure that the judgment has not been renewed by the filing of an affidavit of renewal in any one of these other counties.

¶ 31 In *Fay v. Harris,* 64 Ariz. 10, 13, 164 P.2d 860, 863 (1945), our supreme court held that the provisions of the judgment renewal statutes "must be followed strictly in order that a judgment may be renewed." Even in *Fay* itself and in subsequent cases, the Arizona courts have held that some errors in the affidavits filed may not be considered fatal if they are not misleading. Penney's filing of the affidavit for renewal in a superior court in a county different from that in which its judgment was docketed, however, did not provide reasonable notice to interested persons of the status of the judgment and cannot be considered a correctable error.

## ATTORNEY'S FEES

¶ 32 The Lanes request an award of attorney's fees on appeal pursuant to A.R.S. section 12–341.0l(A). Although the Lanes are the successful party to the appeal, we do not find A.R.S. section 12–341.01(A) applicable. The appeal raises issues concerning interpretation of statutes and court rules. It does not involve contract issues.

## CONCLUSION

¶ 33 For the reasons explained in this opinion, we hold that no error and no abuse of discretion occurred in the trial court's decision to vacate and reenter the judgment. Therefore, we reach the appeal from the trial court's order in which it ruled that an affidavit for renewal of judgment that was filed timely, albeit in the wrong county, was effective to keep the judgment enforceable. We reverse the trial court's decision because we conclude that the statutory requirement of filing in the "proper court," pursuant to the judgment renewal statutes, means that if the judgment was a Coconino County Superior Court judgment, the affidavit of renewal of the judgment was not effective unless timely filed in the Coconino County Superior Court rather than in the superior court located in some other county. We remand to the trial court with directions to deny Penney's motion requesting entry of affidavit for renewal of judgment *nunc pro tunc* to May 5, 1997. We deny the Lanes' request for attorney's fees.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge, and MICHAEL D. RYAN, Judge.