NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

ANGELA M. PALADINO, *Petitioner/Appellee,*

*v.*

RICHARD W. MACGURN, *Respondent/Appellant.*

No. 1 CA-CV 22-0513 FC
FILED 8-01-2023

Appeal from the Superior Court in Maricopa County
No. DR1997-015572
The Honorable Melissa Iyer Julian, Judge

**AFFIRMED**

COUNSEL

Sherman & Howard L.L.C., Phoenix
By Gabriel A. Peraza, Jake Tyler Rapp
*Counsel for Petitioner/Appellee*

Poli, Moon & Zane, PLLC, Phoenix
By Michael N. Poli, Lawrence R. Moon
*Counsel for Respondent/Appellant*

---

## MEMORANDUM DECISION

Judge Andrew M. Jacobs delivered the decision of the Court, in which Chief Judge David B. Gass and Judge Brian Y. Furuya joined.

---

**J A C O B S**, Judge:

¶1 Richard Macgurn appeals the superior court's determinations that his ex-wife Angela Paladino properly renewed three monetary judgments arising from this dissolution of their marriage, and that he failed to satisfy the judgments. Because the superior court did not abuse its discretion, we affirm the superior court's denial of Macgurn's motions to invalidate and vacate the three judgments against him.

### FACTS AND PROCEDURAL HISTORY

### A. The Superior Court Enters the Decree Judgment, Fee Judgment, and Pension Plan Judgment.

¶2 Before the superior court entered the decree dissolving the marriage between Macgurn and Paladino in 2004, Macgurn filed a written objection to Paladino's proposed form of judgment. Macgurn objected to the two paragraphs in the proposed Decree with text that permitted prejudgment interest, arguing that "[n]o interest should accrue . . . until the Decree is entered." Paladino defended her inclusion of interest predating the Decree, but after oral argument, the superior court sided with Macgurn and struck part of the language in ¶ 6 and ¶ 7:

> 6. [Paladino] is awarded spousal maintenance in the amount of $1,950.00 per month for twelve months commencing March 1, 2004 ~~with interest thereon at ten percent per annum until paid~~.

> 7. [Paladino] is awarded $47,568.75 as a money judgment against [Macgurn] as an equalization of the community assets awarded above ~~with interest thereon at ten percent per annum from February 12, 2004, until paid~~.

The court filed the Decree Judgment on December 3, 2004 and a related under advisement ruling stating that it "sustain[ed] the objection to the inclusion of pre-judgment interest in ¶¶ 6 and 7 of the Proposed Decree."

¶3        The Decree Judgment awarded Paladino $167,941.09, including: (1) $1,950 per month of spousal maintenance over 12 months starting March 1, 2004; (2) $47,568.75 as equalization of community assets; (3) $90,000 of attorneys' fees; and (4) $6,972.34 of costs.  The Decree also awarded Paladino a portion of Macgurn's pension plan through a Qualified Domestic Relations Order (QDRO) that would be issued later to specifically direct the distribution of those benefits.

¶4        On April 22, 2005, the court awarded Paladino's share of pension plan benefits requiring Macgurn to distribute $286,700.29 to her (QDRO).  After Macgurn did not comply, Paladino sought to enforce the QDRO.  The court eventually issued a civil arrest warrant and entered a monetary judgment awarding Paladino the amount apportioned in the QDRO (Pension Plan Judgment).

¶5        On October 11, 2006, in a separate judgment, the court awarded Paladino attorneys' fees and costs on appeal in the Decree action totaling $7,382.50 ($6,000 in fees and $1,382.50 in costs) (Fee Judgment).

## B.        Disputes Arise Concerning Renewals of the Judgments.

¶6        Following a Sheriff's sale on January 23, 2007, Paladino received $90,000 and filed and recorded a partial satisfaction of the Decree Judgment in February 2007.  On March 12, 2008, after a garnishment, Paladino received $85,000 and filed and recorded a second partial satisfaction of the Decree Judgment.

¶7        Paladino renewed all the judgments by affidavit under the renewal statute, A.R.S. § 12-1612.  She renewed the Decree Judgment in 2009, 2014, and 2019.  She renewed the Fee Judgment in 2011 and 2016.  She renewed the QDRO apportioning pension benefits in 2010 and 2015, and the corresponding monetary Pension Plan Judgment in 2012 and 2016.

¶8        In April 2020, Macgurn moved under Arizona Rule of Civil Procedure 60 and Arizona Rule of Family Law Procedure 85 to vacate and invalidate the Pension Plan Judgment for lack of proper renewal and as void for lack of service.  He filed a similar, separate motion to invalidate the Decree Judgment and Fee Judgment.  He argued that the Decree Judgment was fully paid on December 5, 2007 from the second partial satisfaction and that an excess of $3,132.36 should have been, but was not, credited to the Fee Judgment.  Macgurn argued that the Decree Judgment was fully paid because the court entering the Decree struck the interest provision such that post-judgment interest did not accrue.  He also asserted the Decree Judgment was improperly renewed because of calculation errors in

Paladino's renewal affidavits and asked the court to declare the Decree and Remand judgments unenforceable based on violations of the renewal statute, A.R.S. § 12-1612.

**¶9** After briefing and oral argument, the court denied Macgurn's motions assailing the Decree Judgment and Fee Judgment and their renewals. The court determined the Decree Judgment had not been fully satisfied by the second partial satisfaction because post-judgment interest was accruing on the judgment by operation of statute at the statutory rate of 10 percent per year. Thus, the court ruled that the Decree Judgment's silence on the accrual of interest did not preclude statutory interest from accruing.

**¶10** The court next determined that Paladino properly renewed the Decree Judgment. Relying on *Triple E Produce Corp. v. Valencia*, 170 Ariz. 375, 377–78 (App. 1991) and *Fay v. Harris*, 64 Ariz. 10, 13 (1945), the court stated that calculation errors in the amount due as represented in the affidavit are not necessarily fatal to renewal when it is apparent that the balance claimed is incorrect. The court explained that when Paladino first renewed the Decree Judgment the outstanding balance after the partial satisfactions was $10,342.38, but the affidavit miscalculated the amount by $588.86 in stating the balance as $10,931.24.[1] Nevertheless, the superior court found that Paladino's first renewal affidavit contained all the information needed to provide notice to third parties and the debtor about the correct amount owed including the original judgment amounts, the amounts deducted by the satisfactions, and the 10 percent rate of interest.

**¶11** The court determined the same was true of Paladino's second renewal in 2014, but the third and last renewal of the Decree Judgment in 2019 was "a closer question . . . because it misstates the principal balance of the debt to include the spousal maintenance award and miscalculated the interest amount." However, the court determined there was enough information to put others on notice of the correct amount due because the affidavit referenced the judgment and prior renewals including recordation numbers which are publicly accessible, and included the amount of the judgment, amounts deducted by the satisfaction payments, and the applicable 10 percent interest rate.

---

[1] The court's ruling discusses the first Decree Judgment renewal filed on November 10, 2009 and the contents of the affidavit even though the ruling mistakenly refers to the renewal occurring on November 10, 2011.

**¶12**         The court similarly determined that Paladino timely and properly renewed the Fee Judgment ruling, "[t]hough some calculation errors occurred in the renewal affidavits . . . it is clear on the face of the renewal affidavits what the actual amount due and owing was notwithstanding inadvertent calculation errors."

**¶13**         The court denied Macgurn's motions to invalidate the Decree Judgment and Fee Judgment and rejected his argument regarding the renewals of the Pension Plan Judgment.  But it set an evidentiary hearing on the issue of a lack of service regarding the Pension Plan Judgment. Thereafter, in a final signed judgment filed June 16, 2022, the court denied Macgurn's motion and claim that the Pension Plan Judgment was void for lack of service.

**¶14**         Macgurn timely appealed.  We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-2101(A)(1), and 12-120.21(A)(1).

## DISCUSSION

**¶15**         Macgurn reasserts the claims from his motions to invalidate the various judgments, though he does not question the adequacy of service related to the Pension Plan Judgment.  Macgurn contends that the superior court misapplied the facts to the law regarding post-judgment interest and the renewal statute, and thus abused its discretion in declining to vacate or invalidate the renewed judgments.

**¶16**         We review the superior court's ruling on a Rule 85(b) motion for an abuse of discretion, *see Clark v. Kreamer*, 243 Ariz. 272, 275 ¶ 10 (App. 2017), and will not set aside the court's fact-findings "unless clearly erroneous," Ariz. R.P. Fam. Law 82(a)(5).  *See* Ariz. R.P. Fam. Law 85(b) (providing court "may relieve a party . . . from a judgment"); *Quijada v. Quijada*, 246 Ariz. 217, 220 ¶ 7 (App. 2019) (reviewing denial of motion to set aside decree for abuse of discretion).  We review *de novo* the court's interpretation of statutes and rules, and its conclusions of law.  *Alvarado v. Thomson*, 240 Ariz. 12, 14 ¶ 11 (App. 2016).

## I.  Paladino Properly Renewed the Decree Judgment, Upon Which Statutory Post-Judgment Interest Accrued By Operation of Law.

**¶17**         Macgurn advances two arguments that the Decree Judgment does not include post-judgment interest — first, that the superior court struck post-judgment interest from the Decree Judgment as entered, and

second, that a post-judgment interest does not accrue on a judgment lacking reference to interest. Both contentions fail.

¶18 First, Macgurn argues that the superior court's striking and initialing of text concerning interest in Paragraphs 6 and 7 of the Decree Judgment shows that the superior court declined to award any post-judgment interest. However, the record belies this assertion. The superior court's contemporaneous under advisement ruling explained the strikethrough as "sustaining the objection to the inclusion of pre-judgment interest in ¶¶ 6 and 7 of the Proposed Decree." Significantly, Macgurn's objection did not argue — or even suggest — that any and all interest on the judgment be denied. And the judgment itself contains no evidence of an affirmative decision to decline all post-judgment interest.

¶19 Second, to the extent Macgurn contends that the Decree Judgment does not award post-judgment interest because it fails to do so expressly, that is not the law. In 2004, when the court entered the Decree Judgment, post-judgment interest accrued "at the rate of ten per cent per annum." A.R.S. § 44-1201(A). By operation of law, the Decree Judgment contained an award of post-judgment interest at the then-effective statutory rate, because the "court ha[d] no discretion to refuse to award such interest," *Matter of Est. of Miles*, 172 Ariz. 442, 445 (App. 1992).

¶20 We affirm the superior court's determination that regardless of the Decree Judgment's silence on the issue of post-judgment interest, such interest accrues on the Decree Judgment by operation of A.R.S. § 44-1201 at a rate of 10 percent per annum. We thus also affirm the superior court's determination that the Decree Judgment was not fully paid, given that Macgurn's arguments that he satisfied the Decree Judgment are premised on his mistaken view that no interest accrued under it.

## II. Macgurn Properly Renewed the Judgments.

### A. Paladino Properly Renewed the Decree Judgment Because the Correct Amount Owed Was Readily Discernable From the Face of Each Renewal Affidavit.

¶21 Macgurn argues the Decree Judgment's renewal affidavits are misleading and do not state exact amounts, and thus fail to strictly comply with A.R.S. § 12-1612. The renewal statutes "are designed to notify interested parties of 'the existence and continued viability of the judgment.'" *Fidelity Nat'l Fin. Inc. v. Friedman*, 225 Ariz. 307, 311 ¶ 19 (2010) (citation omitted). The statutory requirements to renew and revive judgments serve purposes that include notifying the judgment debtor and

other interested parties "of the identity of the judgment to be renewed," *Weltsch v. O'Brien*, 25 Ariz. App. 50, 53 (1975), "inform[ing] . . . as to the present ownership of that judgment so that payment can be properly made," and "giv[ing] the judgment creditor the right to renew his judgment for the amount that is actually due and owing," *Triple E Produce Corp.*, 170 Ariz. at 378. *Accord J.C. Penney v. Lane*, 197 Ariz. 113, 119 ¶ 29 (App. 1999).

**¶22** Under A.R.S. § 12-1612(B), a renewal affidavit must include several items of information. The only one Macgurn contends was lacking here was (B)(5)'s requirement to state "[t]he exact amount due on the judgment after allowing all setoffs and counterclaims known to affiant, and other facts or circumstances necessary to a complete disclosure as to the exact condition of the judgment."

**¶23** Errors in renewal affidavits do not necessarily make a renewal ineffective. For example, in *J.C. Penney*, we observed that under Arizona law "some errors in the affidavits filed may not be considered fatal if they are not misleading." 197 Ariz. at 119 ¶ 31. We distinguished those errors from "Penney's filing of the affidavit for renewal in a superior court in a county different from that in which its judgment was docketed," which "did not provide reasonable notice to interested persons of the status of the judgment." *Id.* We explained that "the affidavit is to be filed with the clerk of the superior court in the same county in which the judgment was docketed so that it can be maintained with the other records concerning that judgment." *Id.* at 118 ¶ 27; *id.* at 119 ¶ 30 (stating the statute does not intend for people checking for renewed judgments must check the court records in all counties).

**¶24** If one can ascertain the required information from the face of the renewal affidavit, then "technical omission or errors in the affidavit will not defeat the renewal of the judgment." *Weltsch,* 25 Ariz. App. at 53 (citing *Fay*, 64 Ariz. 10; *McBride v. McDonald*, 25 Ariz. 207 (1923)). In *Fay*, the renewal affidavit overstated the balance owed, but the renewal was effective because "all of the items of the judgment appeared, all of the credits were set out, [and] the data appeared on the face of the affidavit," allowing calculation of the exact balance. 64 Ariz. at 13–14. *Fay* thus found a renewal valid because its reader could ascertain the balance by eliminating a plainly improper charge, deducting an amount of credit that was shown but not actually deducted, and then computing interest. *Id.*

**¶25** In *Triple E*, we observed that ascertaining the exact balance on the face of the affidavit in *Fay* still required some legal or special knowledge as to which items on the affidavit were correctly computed or accounted

for. 170 Ariz. at 378 (stating rule in *Fay* not intended as "an immutable rule that an error in the computation of the balance is excusable only if the correct amount can be ascertained from the face of the affidavit"). We thus held "that where the amount of the balance is incorrectly overstated because of an inadvertent failure to credit a payment made on the judgment, the judgment is then renewed only in the correct amount and, under such circumstances, any interested party would have the right to correct the judgment on motion and after notice." *Id.*

¶26 Here, Macgurn has not shown the court abused its discretion by determining Paladino properly renewed the Decree Judgment. Macgurn does not challenge the accuracy of the court's calculations or the ability to ascertain the balance owed. The court correctly found that notwithstanding the calculation error in the 2009 renewal that overstated the balance owed by $588.86 after the satisfactions, the affidavit still contained all the information needed to provide notice to third parties and Macgurn about the correct amount owed including the original judgment amounts, the amounts deducted by the satisfactions, and the 10 percent interest rate. *See Fay*, 64 Ariz. at 13–14; *Triple E*, 170 Ariz. at 378. We see no abuse of discretion in the court's ruling that at the time of the first renewal, the $10,342.38 balance owed was ascertainable, though the affidavit stated the balance was $10,931.24.[2]

¶27 Likewise, we agree with the superior court's determination that the second renewal in 2014 also provided the information necessary to ascertain the correct balance owed. Macgurn argues that the second renewal incorrectly calculated interest on the award of spousal maintenance, which was error because that award did not accrue interest and had long since been paid. However, the interest is readily apparent and identifiable, and as such, the actual balance owed can be ascertained. *See Fay*, 64 Ariz. at 13–14; *Triple E*, 170 Ariz. at 378. The worksheet for the second renewal itemized spousal support showing a $0 balance. Further, the Decree Judgment shows that the 12 months of spousal maintenance installment payments had nearly concluded by the time the Decree was entered in 2004. Further, the first renewal did not include interest on spousal maintenance. Thus, the error is identifiable from the renewal and not likely to materially mislead, and the balance is ascertainable from the information therein and the record. *See J.C. Penney*, 197 Ariz. at 118 ¶ 27

---

[2] The court's ruling discusses the contents of the first Decree Judgment renewal filed on November 10, 2009, but mistakenly refers to the renewal occurring on November 10, 2011, although the date did not affect the court's analysis.

(determining renewal affidavits are filed "in the same county in which the judgment was docketed so that it can be maintained with the other records concerning that judgment").

¶28 Finally, Macgurn argues the third renewal in 2019 does not have a worksheet but "avows that the (fully paid) Decree/Judgment is now up to a balance of $48,847.87." However, this argument is premised on Macgurn's contention about post-judgment interest which we reject for the reasons previously discussed. Further, on appeal, Macgurn neither identifies any other errors in the 2019 renewal, nor contests the superior court's resolution of this same claim. In ruling on the third and most recent renewal, the superior court stated that the affidavit incorrectly included the spousal maintenance amount and miscalculated interest. Nevertheless, like the other renewals, the court determined that the 2019 renewal provided sufficient information from which to discern the actual amount. Because Macgurn does not contest this, he has not shown that the court abused its discretion by denying his motion based on the renewals.

### B. Paladino Properly Renewed the Fee Judgment Despite the Math Error in Her 2011 Renewal, Because the Reader of the 2011 Renewal Affidavit and its Attached Worksheet Could Readily Ascertain the Correct Amount Owed.

¶29 Macgurn argues that the Fee Judgment filed on October 11, 2006 that awarded Paladino $6,000 in attorneys' fees and $1,382.50 in costs on appeal, for a total of $7,382.50, was improperly renewed. Specifically, he argues that Paladino filed the first renewal in October 2011 stating the outstanding balance as of October 1 was $17,112.71, which was incorrect because it added $6,000 "out of thin air" to the balance owed.

¶30 Macgurn, however, acknowledges the renewal includes a worksheet showing the correct original total balance of $7,382.50 and the daily interest which he contends is a nearly correct amount resulting in an approximately $2.00 total discrepancy. The worksheet also reflects that with the added interest accrued between 2006 and 2011 of $3,730.21, the total balance due was $11,112.71. Macgurn acknowledges this correct total is listed on the worksheet before the overstated total of $17,112.71, and he does not contend this is inaccurate or an amount that cannot be ascertained.

¶31 We agree with the superior court that all information needed to ascertain the existence of the Fee Judgment and the exact amount owed was contained in the renewal affidavit and worksheet. True, the renewal materials did not itemize or account for the additional $6,000. But the

affidavit-plus-attached-worksheet provided the correct calculation and total and simply misstated it as $6,000 more, apparently because whoever filled it out mistakenly re-added the $6,000 principal to the correct total of $11,112.71 (which already included the $6,000). The superior court did not abuse its discretion in ruling that this error does not mislead about the status and balance owed on the judgment. The $6,000 discrepancy is readily discernable as an obvious mistake. And the renewal did not purport to calculate or account for any additional amount. Thus, here, as in *Fay*, the renewal affidavit overstated the balance owed, but the renewal was effective because again "all of the items of the judgment appeared, all of the credits were set out, [and] the data appeared on the face of the affidavit." 64 Ariz. at 13–14. Here when considering the affidavit's appurtenant worksheet, the reader can readily ascertain the exact balance. *See id*.

**¶32**          Moreover, a later renewal expressly corrected this error. In 2016, Paladino renewed the Fee Judgment a second time showing the outstanding balance as $14,705.37, which did not include the unexplained excess of $6,000. Macgurn does not argue that the second renewal fails to appropriately state the exact amount of the balance owed on the Fee Judgment. And as Macgurn points out, in this litigation, Paladino acknowledged the $6,000 discrepancy in briefing, showing the record in context is clear about the exact amount due on this judgment.

**¶33**          Accordingly, the typographical error overstating the balance owed on the 2011 renewal of the Fee Judgment did not render the renewals defective. We find no error in the superior court's resolution of this claim.

### C.          Paladino Properly Renewed the Pension Plan Judgment Because Her Renewals Correctly State the Amount Due on the Judgment.

**¶34**          Macgurn contends that the two renewals related to the QDRO and two related to the Pension Plan Judgment are confusing and make it difficult to track the "exact amount due on the judgment" and the "exact condition of the judgment" as required by the renewal statute, A.R.S. § 12-1612(B)(5). Macgurn claims Paladino sowed confusion because she was not required to renew the non-monetary QDRO, but did renew it, and when renewing, included interest from the date of the QDRO, while the renewals for the monetary Pension Plan Judgment added interest from the correct date in 2007. Macgurn's challenges do not establish grounds to invalidate or vacate the Pension Plan Judgment as invalidly renewed. Indeed, Macgurn underscores the accuracy of Paladino's renewals when he notes that they all include the correct original amount owed of $286,729. Macgurn

thus fails to show any defect in the Pension Plan Judgment renewals or that the superior court abused its discretion by denying his motion to invalidate and vacate the Pension Plan Judgment.

**CONCLUSION**

¶35        For the reasons stated, we affirm.

