**In re Billy Wayne DAVIS and Billie Jo Davis, Debtors.**

Bankruptcy No. 86–03170–PHX–SSC. Adversary No. 87–141.

United States Bankruptcy Court, D. Arizona.

Jan. 24, 2005.

Michael S. Manning, Manning & Associates, Phoenix, AZ, for Debtors.

## MEMORANDUM DECISION

SARAH SHARER CURLEY, Chief Judge.

### I. Preliminary Statement

This matter comes before the Court on the Debtors' Motion under Federal Rule of Civil Procedure 60(b) to set aside a bankruptcy court judgment obtained in 1988.[1] The Debtor and the current holder or real party in interest as to the judgment, Lone Star Debt, LLC, agreed that there were certain legal issues as to the validity of the 1988 judgment that should be bifurcated from the factual issues set forth in the

Motion and addressed first by this Court. The legal issues were fully briefed and oral argument was conducted on this matter on October 27, 2004.

At the oral argument, the Debtor requested that Lone Star's Sur–Reply, filed on October 27, 2004, without Court approval, be stricken from the record. The Court agreed that since the parties had agreed upon a briefing schedule, the Court had not authorized a Sur–Reply by Lone Star, and the pleading had been filed just prior to oral argument, the Debtor's oral motion requesting that the pleading should be stricken was granted.

At the conclusion of the hearing, the Court advised the parties that it would render a separate memorandum decision and order on the matter and that the Court would not issue any temporary restraining order or injunction in the case.[2]

This Decision constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052. This Court has jurisdiction over these matters, and they are a core proceeding. 28 U.S.C. §§ 1334 and 157. (West 2005).

### II. Factual Discussion

For purposes of the legal issues presented to this Court in this bifurcated matter, the parties have agreed on certain relevant facts.[3] In 1986, Billy Wayne Davis and his wife, Billie Jo Davis, filed Chapter 7 bankruptcy proceedings in the District of Ari-

---

1. The Debtor initially filed an Emergency Motion under Federal Rule of Civil Procedure 62(b), which was denied by this Court.

2. The fact that the Court did not set aside the judgment at the conclusion of the oral argument was a reflection of this Court's doubts that the Debtor had presented a legal position that this Court could accept. The Court advised the Debtor, since a sale of his assets was scheduled in Florida within the next 7 days, that he should consider what action, if any, he

could take in the Florida Courts to stop the sale of the assets. This Court did not intend to issue any injunction based upon what had been presented to it at that time by the interested parties.

3. The parties agreed that if this Court denied the Debtors' Motion as to the legal issues presented, the parties would then proceed to an evidentiary hearing, and they could present additional facts to the Court at that time.

zona, which were assigned Case No. B–86–3170–PHX–SSC. Harold K. Shipley and Freeda P. Shipley, individually and in their capacities as Trustees of the Revocable Living Trust Agreement, and Charles E. Shipley ("Plaintiffs") commenced an action in the Bankruptcy Court to have their debt be deemed non-dischargeable. The action was assigned Adversary Proceeding No. 87–141–SSC. This Court conducted numerous pre-trial proceedings on this matter and ultimately entered an order striking the Debtors' Answer and entering default against the Debtors in the Adversary.[4]

On November 21, 1988, the Court entered judgment ("Judgment") in favor of the aforementioned Plaintiffs and against the Debtors, in the amount of $782,560.96, which obligation was declared non-dischargeable under 11 U.S.C. § 523(a)(2). Interest was to accrue on said Judgment at the rate of 10 percent per annum, or such higher interest rate as may have been permitted on judgments, until the Judgment was paid in full.[5]

On April 14, 2004, the Debtors requested that their bankruptcy case be reopened to consider the continuing validity of the 1988 Judgment. As previously noted, the Debtors have filed several motions under Fed.R.Civ.P. 60(b). For purposes of resolving the legal issues that were to be bifurcated and heard by the Court at oral argument, the Debtors agreed to file an Amended Motion under Fed.R.Civ.P. 60(b).

The Judgment was entered on the Bankruptcy Court Docket on November 21, 1988.[6] On November 19, 1993, the attorney for the Plaintiffs filed a Judgment Renewal Affidavit with the Bankruptcy Court.[7] The Affidavit stated that considering all setoffs, counterclaims, accruing costs, principal, and accruing interest, the Plaintiffs were owed $1,173,841.44 as of November 20, 1993. On September 8, 1998, the Plaintiffs filed another Judgment Renewal Affidavit with the Bankruptcy Court.[8] The notarization on the Affidavit stated that it was "subscribed and sworn to" before the notary public on the "4th day of September, 1993." The Plaintiff's counsel, discovering the error in the notarization, filed an Amendment to the Judgment Renewal Affidavit on November 13, 1998.[9] The Amendment pointed out that the notarization was clearly wrong; that the prior Affidavit was not notarized in 1993, but in 1998. The Amendment then stated that "In all other respects the Judgment Renewal Affidavit remains the same." [10] As of July 28, 1998, the Debtors owed the Plaintiffs the sum of $1,565,121.92, with accruing interest and costs from that date. On November 5, 2003, the attorney for the Plaintiffs filed the Judgment Renewal Affidavit, reflecting an amount due, as of October 23, 2003, of $1,975,911.36, with accruing interest and costs thereon.[11]

4. See Exhibit B to the Debtor's Motion for Order of Relief from Judgment, Docket Entry No. 37. The Debtor believes that he has a separate factual basis to set aside this Order, but the Court will determine that issue at a later hearing.

5. *Id.* at Exhibit A.

6. Debtors' First Amended Motion for Relief Under Fed.R.Civ.P. 60(b)(6), Exhibit A thereto, Docket Entry No. 49.

7. *Id.,* Exhibit B thereto.

8. *Id.,* Exhibit C thereto.

9. *Id.,* Exhibit D thereto.

10. *Id.* at p. 2.

11. *Id.,* Exhibit E thereto.

Lone Star Debt, LLC, is the assignee of the Plaintiffs, and is pursuing collection of the Judgment.

### III. Legal Issues

A. How Does A Federal Bankruptcy Court Judgment Remain Viable and Enforceable After The Passage Of A Number of Years?

B. Was the Plaintiffs' 2003 Renewal Affidavit Filed Timely, Allowing the Assignee, Lone Star, LLC, To Continue With Its Collection Efforts?

### IV. Legal Discussion

A. *How Does A Federal Bankruptcy Court Judgment Remain Viable and Enforceable After The Passage Of A Number of Years?*

As to the viability and enforceability, the Debtors and Lone Star initially rely on 28 U.S.C. § 1963, Registration of Judgments, which provides as follows:

A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown. Such a judgment entered in favor of the United States may be so registered any time after judgment is entered. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

A certified copy of the satisfaction of any judgment in whole or in part may be registered in like manner in any district in which the judgment is a lien.

The procedure prescribed under this section is in addition to other procedures provided by law for the enforcement of judgments.

There is no time limit stated as to when a Federal Court judgment should be registered. This statutory provision is supplemented by Fed. Bankr.R. 7069, which provides:

Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable...

Since the Plaintiffs registered the Judgment in Arizona, the foregoing authority suggests that the Court should next review the law of Arizona to determine what steps should have been taken over the years to allow the Judgment to remain valid and enforceable. cf. *Matanuska Valley Lines, Inc. v. Molitor,* 365 F.2d 358 (9th Cir. 1966).

Lone Star then advances the argument that since the Arizona Statute as to the renewal of judgments only refers to those judgments in the Arizona Federal District Court, any judgment entered in the Bankruptcy Court remains viable, and enforceable, forever. The relevant statute is ARS § 12–1612, Renewal by Affidavit, which provides, in Subsection A:

A judgment for the payment of money which has been entered and docketed in the civil docket or civil order book of the

United States district court or superior court, whether originally rendered by it or entered upon a transcript of judgment from another court, or recorded with the county recorder, may be renewed by filing an affidavit for renewal with the clerk of the proper court.

However, Lone Star omits a number of relevant Bankruptcy Rules, which when read with the aforesaid Arizona Statute, provide guidance on the viability and enforceability of Arizona Bankruptcy Court judgments.

First, Fed. Bankr.R. 9021, Entry of Judgment, incorporates Fed.R.Civ.P. 58 concerning the entry of judgments in Bankruptcy Court adversary proceedings. Although Fed.R.Civ.P. 58 only refers to the "court," it is understood that because of the language of incorporation in the Bankruptcy Rules, Rule 58 has been expanded to include the bankruptcy court. The Rule, in Subsection 2, states that once a decision has been rendered by the court which grants relief other than for a sum certain or for costs, the court must approve the form of judgment, and the clerk of the court shall enter it on the docket. Once the judgment is entered, the party which is the holder of same may proceed with execution as provided in Fed. Bankr.R. 7069. This Rule incorporates Fed.R.Civ.P. 69. Rule 69 refers to "court" in part of the Rule, then also states that the "procedure on execution...shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought...." Given the language of incorporation, a party obtaining a bankruptcy court judgment would proceed with the practice and procedure of the district in which the bankruptcy court is located.

Fed. Bankr.R. 5003, Record Kept by the Clerk, requires, in Subsection (a), that the bankruptcy court clerk to keep docket in each case and to enter a "judgment, order, and activity in that case as prescribed by the Director of the Administrative Office of the United States Courts." Under Subsection (c), the clerk, as directed by the Administrative Office, must also keep a "correct copy of every final judgment..." It further states that on "request of the prevailing party, a correct copy of every judgment...for recovery of money or property shall be kept and indexed with the civil judgments of the district court."

Fed. Bankr.R. 9029(b) is the final provision which assists in determining how parties should proceed. It states "A judge may regulate practice in any manner consistent with federal law, these rules, Official Forms, and local rules of the district."

It has been the practice in the Arizona Bankruptcy Court that judgments are initially docketed in the Bankruptcy Court. If a party wishes to execute on the judgment, the party follows the procedures under Arizona State law. If the party wishes to proceed in another Federal District or State, the party requests a certified copy of the Bankruptcy Court Judgment, which is then filed in the Arizona Federal District Court. The party then proceeds to domesticate the judgment in the other District or State, and executes on the judgment pursuant to the law of that District or State. As to renewal affidavits of Arizona Bankruptcy Court judgments, the party follows the procedure that is outlined in the Arizona statutes that refers to the "district court." Thus, this Court rejects the argument of Lone Star that once a judgment is docketed in the Arizona Bankruptcy Court, it lasts forever.

B. *Was the Plaintiffs' 2003 Renewal Affidavit Filed Timely, Allowing the Assignee, Lone Star, LLC, To Continue With Its Collection Efforts?*

■ Having determined that Arizona law applies to the viability and ultimate

enforceability of the Judgment, the Court must determine whether the Plaintiffs properly renewed their Judgment in 2003, so that Lone Star may now proceed with execution thereon.

First, once the Plaintiffs docketed the Judgment, on November 21, 1988, it was effective for a period of five years from the date of docketing. However, no judgment may be enforced in Arizona, by writ of execution or otherwise, unless the enforcement is effectuated within the five-year period or within the period of time of the judgment's extension.[12] Within ninety days of November 20, 1993, or the expiration of five years from the date of entry of the Judgment, the Plaintiffs were required to file their first renewal affidavit.[13] ARS § 12–1612(B) (West 2005). Once the affidavit is docketed by the clerk of court, the judgment is renewed for a period of five years from the time of docketing of the affidavit.[14] ARS § 12–1613(B) (West 2005). The Plaintiffs did timely file the renewal affidavit, so the Judgment was properly extended to November 1998.

However, by September 1998, the Plaintiffs wanted to extend the effective date of the Judgment. Counsel for the Plaintiffs prepared and filed a Judgment Renewal Affidavit well prior to the deadline. The Affidavit contained an obvious error in the notarization. The notary stated that the statements of counsel were made before her on the "4th day of September, 1993." Since the Affidavit was not prepared until 1998, the "1993" date was clearly a typographical error. After filing the Judgment Renewal Affidavit, counsel for the Plaintiffs immediately discovered his error.

Lone Star, as the successor to the Plaintiffs, and the Debtors now debate what should have been done next. Plaintiffs' counsel believed that he had to correct the error prior to the November 1998 deadline. Lone Star relies on ARS § 12–1612(E) as the basis for this action:

> Additional and successive affidavits as provided for in subsection B may be made and filed within ninety days of expiration of five years from the date of the filing of a prior renewal affidavit.

Lone Star argues that this Subsection allowed the Plaintiffs and their counsel to file one or more affidavits prior to the November 1998 deadline. Of course, the Debtors state that once the Plaintiffs renewed the Judgment in September 1998, because the later amendment to the Judgment Renewal Affidavit was not a substantive change, the Plaintiffs were required to follow a new schedule, with the next Judgment Renewal Affidavit being filed in September 2003. Because the final Judgment Renewal Affidavit was not filed until November 2003, the Debtors state that the 2003 Affidavit was untimely filed, and the Judgment is no longer enforceable. There are no Arizona cases which discuss ARS § 12–1612(E).

█ Lone Star and the Debtors rely on the decision of *Triple E. Produce Corp. v. Valencia*, 170 Ariz. 375, 824 P.2d 771 (Ariz. App. Div. 2 1991) in support of their respective positions. The *Triple E.* Court

---

**12.** ARS § 12–1551 bars "any judgment" from being enforced in Arizona by writ of execution unless it is done within five years of entry of the judgment or a valid renewal pursuant to ARS § 12–1612.

**13.** ARS § 12–1612(B) states that the "judgment creditor, his personal representative or assignee may within ninety days preceding

the expiration of five years from the date of entry of such judgment, make and file an affidavit, known as a renewal affidavit...."

**14.** ARS § 12–1613(B) provides that the "entry and docketing of the affidavit by the clerk shall renew the judgment for a period of five years from the time of docketing."

specifically stated that although a corrected renewal affidavit was filed in that case, it took no position as to the effect of such an affidavit. *Id.* at 774, n. 1. However, the Court did allow a flexible approach to a renewal affidavit with the incorrect amount. Since the renewal affidavit inadvertently failed to provide a credit for a payment made, the trial court could determine the amount actually owed the creditor and correct the judgment. The Court could make the correction on motion, after notice, by the creditor, or the Court could correct the judgment on its own motion. *Id.*

Although the Plaintiffs in this matter did not request any court intervention to correct their error in 1998, this Court disagrees with the Debtors that the *Triple E.* Decision requires that such court action be taken. Since the Decision appears to provide some flexibility to a creditor to correct an error, this Court concludes that court action is appropriate if the renewal affidavit is filed after the deadline for the renewal of the judgment has passed. In fact, in the *Triple E.* case, the creditor did not attempt to correct its mistake in the judgment, by way of an amended affidavit, until over a year and a half after it filed the judgment renewal affidavit. *Id.* at 772. Certainly given the passage of time, it makes sense that the creditor could not correct the error without some type of court action. In this case, however, the Plaintiffs were able to correct the error well prior to the November 1998 deadline and should receive the benefit of that action. Once the Amended Judgment Renewal Affidavit was filed on November 13, 1998, the Plaintiffs then had five years from that date to enforce the Judgment. Any other decision by this Court would be an overly technical reading of the statute.

The parties also discuss the decision of *Mobile Discount Corp. v. Hargus,* 156 Ariz. 559, 753 P.2d 1215 (Ariz.App. Div. 2 1988). In that case, the judgment was initially entered on February 26, 1976, and the renewal affidavit was filed on January 29, 1981, and recorded on February 5, 1981. The Second Affidavit of Renewal was filed on February 14, 1986 and recorded on February 21, 1986. The Court concluded that the Second Affidavit was filed too late, and the judgment was not enforceable. However, the facts in the Decision reflect that the first affidavit was timely filed. The Court noted that the second affidavit was recorded on February 21, 16 days past the expiration of five years from the first renewal affidavit. This Decision supports the Lone Star position, since the Court relied on the last event done by the creditor, the recordation of the first renewal affidavit on February 5, as the commencement of the time period to compute the next five-year period. This Court will also rely on the last act done by the Plaintiffs prior to the expiration of the deadline in 1998, or the filing of the Amended Judgment Renewal Affidavit on November 13, 1998, as starting the next five-year time period. The Plaintiffs then filed the next Judgment Renewal Affidavit prior to the expiration of the time period. The Judgment Renewal Affidavit filed by the Plaintiffs on November 5, 2003, was timely filed, and Lone Star, as the successor, may enforce said Judgment.

### V. Conclusion

The Court has bifurcated the issues presented by the parties to determine whether the Lone Star Judgment may still be valid and enforceable under Arizona law. Having concluded that Lone Star may legally proceed with its enforcement action, the Court must next address the evidentiary issues as to whether the Judgment should be set aside based upon due process and other considerations as outlined in the Debtors' Amended Motion. The

parties shall meet and confer, and the Court will set, upon notice, a separate Fed. Bankr.R. 7016 conference.

The Court will execute a separate order incorporating this Memorandum Decision.