697 P.2d 1073

**CITY OF PHOENIX, a municipal corporation, Plaintiff-Appellee,**

v.

**Richard E. GEYLER, widower of Bernice H. Geyler, deceased, Defendant-Appellant.**

No. 17615–PR.

Supreme Court of Arizona, En Banc.

March 19, 1985.

Andrew Baumert, Phoenix City Atty. by Kent T. Reinhold, Phoenix, for plaintiff-appellee.

Robert C. Stubbs & Associates by Robert C. Stubbs, G. Lawrence Schubart, Trudy Nelson Kapley, Tucson, for defendant-appellant.

## OPINION

FELDMAN, Justice.

Defendants, Richard and Bernice Geyler, petitioned us to review a decision of the court of appeals (City of Phoenix v. Geyler, No. 1 CA–CIV 6402, filed May 22, 1984). The memorandum decision affirmed the trial court's order denying defendants' motion for relief from judgment brought pursuant to Rule 60(c), Ariz.R.Civ.P., 16 A.R.S. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5, and Rule 23, Ariz.R.Civ.App.P., 17A A.R.S.

The issues are as follows:

1. What are the standards upon which to determine whether relief from a civil judgment should be granted in order to accord a litigant the privilege of taking a delayed appeal?

2. What is the test for determining whether the trial court has abused its discretion in granting or denying discretionary relief where that court has failed to indicate the grounds for its decision and where none is patent in the record?

3. What are the standards for determining whether neglect or mistake is "excusable"?

Deeming these questions of law to be important issues which require further clarification, we granted defendants' petition for review. Rule 23(c)(4), *supra.*

## FACTS

On August 8, 1979, the City of Phoenix filed a complaint seeking condemnation of defendants' property. The matter was tried to a jury, which returned a verdict for defendants in the amount of $1,295,507.00. The parties had stipulated that the rate of interest as well as the date of its accrual were to be decided by the court after the verdict. On October 19, 1981, a hearing was held regarding the date of accrual, the only issue on which the parties had been unable to reach an agreement. On October 21, defense counsel mailed alternate forms of judgment to the trial judge. On October 22, the trial judge signed and filed a form of judgment awarding interest from the date of judgment, thus deciding the accrual issue contrary to defendants' contention that interest should accrue from the date of summons. Because more than two years had elapsed between issuance of the summons and the date of judgment, the difference in interest (at the stipulated rate of 12.75%) was over $350,000.00. As required by Rule 77(g), Ariz.R.Civ.P., 16 A.R.S.,[1] notice of entry of judgment was mailed to counsel. The notice consisted of a minute entry order, in the form following:

---

1. Unless otherwise indicated all further references to "rule" or the "rules" refer to the Arizona Rules of Civil Procedure.

**IN THE SUPERIOR COURT**
OF
MARICOPA COUNTY, STATE OF ARIZONA

Oct. 22, 1981 HON. HOWARD F. THOMPSON

WILSON D. PALMER, Clerk
M. Swader, Deputy

OFFICE DISTRIBUTION

| APPEALS | |
| --- | --- |
| BONDS REFUND | |
| FORFEITURE | |
| CHANGE OF VENUE | |
| JURY FEES | |
| REMANDS | |
| SENTENCING | |

: 392922

CITY OF PHOENIX City Attorney
 • by Kent Reinhold

 vs

RICHARD B. GEYLER Robert C. Stubbs, Tucson

 Plaintiff having filed with the Court an affidavit
which the parties had agreed could be filed by counsel for plain-
tiffs during the course of the hearing on Oct. 19, 1981 and that
the same be made part of the record of said hearing,

 IT IS ORDERED that the affidavit of Kent T. Reinhold be
marked Exhibit 52 and filed herein as part of the record of said
hearing.

 The question of the amount of interest and the date from
which the interest should run having been under advisement,

 The Court Finds under A.R.S. 12-1123 interest is not
authorized from the date of the summons.

 IT IS ORDERED that interest shall accrue on the judgment
entered herein from the date of judgment.

 - - - - - - - - - - - - - - - - - -

 Later:

 Proposed Form of Judgment being submitted to the Court,

 ORDERED approving, settling formal written Judgment
herein signed by the Court.

 FILED: Judgment

Received Oct 24 1981

Processed: OCT 26 1981

Page 2

---

The date of the minute entry (October 22, 1981) is shown in the "DATE" space near the top of the page. Near the bottom of the page are two other dates:

"Received Oct 24 1981

Processed Oct 26 1981"

Immediately above those dates the words "Mail Distribution Center" were stamped, but the first two words were completely illegible. The only word which might be made out was the word "Center." The three-word, stamped phrase and the dates

accompanying it actually identified the respective dates on which the order had been received and mailed to counsel by the central mail distribution center of the Maricopa County Superior Court.

Thus, the stamped dates of October 24 and October 26 had no connection with the date of filing the judgment. However, both defense counsel and his secretary overlooked the date line showing October 22 or misunderstood the form and took the October 24 date to be the date the judgment was filed, and calculated the 15-day time limit for filing a Rule 52(b) motion to alter or amend the judgment from the October 24 date. This produced an erroneous assumption that the last day for filing the motion was Monday, November 9, 1981. Defense counsel filed the papers on that day. Unknown to counsel, the last day to file the motion actually had been Friday, November 6, the fifteenth day after entry of judgment on October 22.

■ While a timely motion under Rule 52 extends the time for filing a notice of appeal after judgment (Rule 9(b), Ariz.R. Civ.App.P., 17A A.R.S.), the untimely motion filed in the case at bench did not accomplish an extension. *Edwards v. Young,* 107 Ariz. 283, 486 P.2d 181 (1971). Thus, the last day for appeal from the judgment entered on October 22 was Monday, November 23, the end of the 30-day appeal period allowed when no post-trial motion has been filed. Rule 9(a), Ariz.R. Civ.App.P., 17A A.R.S.

If defendants' counsel had known that the Rule 52 motion had not been timely filed, he could have withdrawn that motion and filed a notice of appeal at any time on or before November 23. He remained in ignorance because the City did not immediately raise the issue of untimeliness in the response which it filed on November 16. On November 24, one day after the time to appeal had expired, the City consulted its calendar and moved to quash the Rule 52(b) motion on grounds of untimely filing. This was the first time that counsel suspected that he had made an error, but it was too late to withdraw his untimely motion and

file a notice of appeal. On November 30, however, he did file a motion for relief from judgment under Rule 60(c). The trial judge denied defendants' motion. Subsequently, a different judge correctly denied the Rule 52(b) motion on grounds that it had not been timely filed. *Edwards v. Young, supra.*

■ The court of appeals rejected the Geylers' argument that relief should be granted because the trial court had violated Rule 58(d) by signing the proposed form of judgment without waiting, as required by that rule, for five days after the form was lodged by defense counsel. (Slip op. at 7, citing *Gutierrez v. Gutierrez,* 20 Ariz.App. 388, 513 P.2d 677 (1973)). We agree with the court of appeals that the Geylers were not prejudiced by the trial court's violation of Rule 58(d). The Geylers also argue that the trial court erred in failing to grant relief by amending the judgment, *nunc pro tunc,* to reflect entry on October 24. We do not agree. Both the trial judge and the court of appeals were correct in holding that there is no authority to enter a *nunc pro tunc* order in a situation where the record reflected what the court had actually done. *See American Surety Co. v. Mosher,* 48 Ariz. 552, 64 P.2d 1025 (1936). We conclude, therefore, that the Geylers were entitled to relief, if at all, only under subsections 1 or 6 of Rule 60(c). While defendants' motion referred only generally to Rule 60(c), the supporting memorandum commenced with explicit reference to and quotation of subsections (1) and (6) of the rule. We deem, therefore, that such issues were fairly presented. They were explicitly presented in the briefs filed in the court of appeals and were the focus of that court's decision.

## STANDARDS FOR GRANTING RELIEF FOR TAKING OF DELAYED APPEAL

We begin by noting that defendants' true object here is not "relief from the judgment"—they do not seek to have the judgment vacated so that they may litigate the matter on the merits. The issue has already been argued and decided on the mer-

its. Defendants' objective, rather, is to have the judgment vacated and reentered, so that they may then file a timely appeal from it. What they truly seek, therefore, is the privilege of delayed appeal. In *Vital v. Johnson,* 128 Ariz. 129, 624 P.2d 326 (1980), our court of appeals held that Rule 60(c) could not be used to relieve a party from a judgment when that party's objective was to have the judgment vacated and then reentered, so as to permit delayed appeal. We disapproved the *Vital* rule in *Park v. Strick,* 137 Ariz. 100, 669 P.2d 78 (1983), where we held that Rule 60(c)(6) could be utilized for such a purpose when the "aggrieved party establishes a lack of knowledge that judgment has been entered, and asserts additional reasons that are so extraordinary as to justify relief...." *Id.* at 104, 669 P.2d at 82.

■ In recent times other courts have become less devoted to applying the strict letter of procedural law and more concerned with equitable disposition on the merits. *E.g., Rodgers v. Watt,* 722 F.2d 456 (9th Cir.1983) (en banc); *Expeditions Unlimited Aquatic Enterprises v. Smithsonian Institute,* 500 F.2d 808 (D.C.Cir. 1974). However, there is a "compelling interest in the finality of judgments" which should not lightly be disregarded. *Rodgers v. Watt, supra; Park v. Strick, supra.*[2] In considering whether to allow a delayed appeal, the trial judge should, therefore, remember that the party seeking relief has had his day in court since the case has already been litigated on its merits. In such a situation, the principle of finality carries greater weight than when the movant is seeking relief from judgment by default. A stronger showing, therefore, should ordinarily be required to justify relief. *Rodgers v. Watt, supra.* We believe the criteria established by an en banc panel of the 9th Circuit in *Rodgers v. Watt* adequately address these concerns:

"Specifically we hold that in determining whether Rule 60(b) is applicable [in a delayed appeal situation] a court should consider (1) absence of Rule 77(d) notice; (2) lack of prejudice to respondent; (3) prompt filing of a motion after actual notice; and (4) due diligence, or reason for lack thereof, by counsel in attempting to be informed of the date of the decision."

722 F.2d at 460. These factors, combined with a showing under *Park v. Strick, supra,* of "extraordinary," "unique," or "compelling" circumstances, establish the proper standard for determining whether to grant Rule 60(c) relief. The party seeking delayed appeal must, therefore, not only make the showing generally required for relief under Rule 60(c), but must also meet the more stringent standards of *Rodgers v. Watt, supra.*

■ In the case at bench, the notice was sent, but mistakenly interpreted by counsel, who now claims that this was the type of "inadvertence, mistake or excusable neglect" recognized as grounds for relief under Rule 60(c)(1). Where the proper factual showing is made, we see no difference in principle in allowing delayed appeal under any subdivision of Rule 60(c) so long as the proper additional standards for delayed appeal are applied. *See Rodgers v. Watt, supra; Park v. Strick, supra.* We turn, therefore, to consider the propriety of the trial court's denial of all relief.

## STANDARD OF APPELLATE REVIEW OF RULE 60(c) ORDERS

■ We commence with an acknowledgement that the standard we apply to the review of a trial court's order granting or denying relief under Rule 60(c) is whether the court abused its discretion. *Coconino Pulp and Paper Co. v. Marvin,* 83 Ariz. 117, 317 P.2d 550 (1957). In exercising its discretion, the trial court is not authorized to act arbitrarily or inequitably, nor to

---

**2.** This court first recognized this principle when it refused to consider the delayed appeal of a defendant under sentence of death, holding that the attempt to appeal 30 days after the time had expired was no more than a "pretended appeal"

and ordering the execution to proceed regardless of the merits of the documents which had been filed. *Villalobo v. State,* 17 Ariz. 261, 151 P. 946 (1915).

make decisions unsupported by facts or sound legal policy. *Bowman v. Hall*, 83 Ariz. 56, 316 P.2d 484 (1957). Neither does discretion leave a court free to misapply law or legal principle. *Johnson v. Howard*, 45 Wash.2d 433, 436, 275 P.2d 736, 739 (1954). As we have previously noted:

The term "abuse of discretion" is unfortunate. In ordinary language, "abuse" implies some form of corrupt practice, deceit or impropriety.... However, in the legal context, ... the ordinary meaning of the word has been considered inappropriate and the phrase as a whole has been interpreted to apply where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice. Similarly, a discretionary act which reaches an end or purpose not justified by, and clearly against, reason and evidence "is an abuse."

The law would be better served if we were to apply a different term.... [W]e should keep some operative principles in mind. Something is discretionary because it is based on an assessment of conflicting procedural, factual or equitable considerations which vary from case to case and which can be better determined or resolved by the trial judge, who has a more immediate grasp of all the facts of the case, an opportunity to see the parties, lawyers and witnesses, and who can better assess the impact of what occurs before him. Where a decision is made on that basis, it is truly discretionary and we will not substitute our judgment for that of the trial judge; we will not second-guess. Where, however, the facts or inferences from them are not in dispute and where there are few or no conflicting procedural, factual or equitable considerations, the resolution of the question is one of law or logic. Then it is our final responsibility to determine law and policy and it becomes our duty to "look over the shoulder" of the trial judge and, if appropriate, substitute our judgment for his or hers. This process is sometimes, unfortunately, described as a determination that the trial judge "abused his discretion."

*State v. Chapple*, 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983) (citations omitted).

 Our question here, then, is whether the trial court's denial of relief was grounded upon a determination of disputed questions of fact or credibility, a balancing of competing interests, pursuit of recognized judicial policy, or any other basis to which we should give deference. The court has provided us with little assistance in answering this question.[3] It denied the motion without explanation or comment and without referring to Rule 60(c) or any of its provisions. The four-paragraph order seems to have dealt with none of the legal issues raised by the facts and, instead, only recites a few of the non-determinative facts. The order reads as follows:

1. The records and file herein reflect that a formal written Judgment was signed by the Court and filed with the Clerk of the Court on October 22, 1981.

2. The Court's minute entry of October 22, 1981 correctly reflects the Court's signing and filing of the Judgment on said date.

3. The ambiguity, if any, occurred through counsel's reliance on the Clerk of the Court Mail Distribution Center's stamp at the bottom of the Court's minute entry indicating that the Distribution Center received the Court's minute entry on October 24, 1981 and processed the minute order on October 26, 1981.

4. The Court lacks jurisdiction to enter a Nunc Pro Tunc order indicating the Order was signed October 24, 1981 when in fact the Judgment was signed on October 22, 1981.

IT IS THEREFORE ORDERED denying Defendant's motion.

---

**3.** While trial judges generally are not required to give reasons for discretionary rulings, some explanation, however brief, greatly assists in appellate review, and may prevent unnecessary reversal where facts are close and support for a ruling is not patent from the record.

We recognize the obligation of appellate courts to affirm where any reasonable view of the facts and law might support the judgment of the trial court. This rule is followed even if the trial court has reached the right result for the wrong reason.[4] *Gary Outdoor Advertising Co. v. Sun Lodge,* 133 Ariz. 240, 242, 650 P.2d 1222, 1224 (1982). Thus, on appeal from denial of Rule 60(c) relief, the trial court will be sustained unless "undisputed facts and circumstances require a contrary ruling," in which event this court can and will overturn the trial court's discretionary ruling. *Coconino Pulp v. Marvin,* 83 Ariz. at 121, 317 P.2d at 552.

The usual practice will not suffice for the case at bench. We are given no indication that the trial court exercised discretion at all. The trial court's decision to deny relief was made at a time when *Vital v. Johnson* was the law and before we disapproved that case in *Park v. Strick, supra.* *Vital* was the principal authority advanced by the City in opposition to defendants' motion for relief. We think it is as likely that the trial court denied relief because it thought it had no power to grant the motion, as it is that the trial court exercised its discretion and found that a proper factual showing had not been made. No grounds for its action having been given by that court, and none clearly appearing from the record, we are not disposed to assume that the trial court exercised its discretion and denied relief for some proper and permissible reason. Instead, we examine the facts of the case to determine whether tenable grounds might exist for denial of relief under either Rule 60(c)(1) or 60(c)(6). If such grounds are apparent in the record, then we should affirm, even though the trial court may have reached the right result for the wrong reason.

## THE FACTUAL BASIS—STANDARDS OF EXCUSABILITY

In seeking relief under Rule 60(c), defendants' counsel filed an affidavit, the facts of which stand uncontroverted. The affidavit indicates that counsel received a copy of the October 22 order on October 28; that he noted the stamp indicating "Received: Oct 24 1981; Processed: Oct 26 1981"; that he interpreted this as the date on which the clerk of court had received the signed judgment for filing; and that he instructed his secretary to mark the office calendar for "15 days from October 24, 1981 so that affiant could file a timely post-trial motion pursuant to Rule 52(b)." The affidavit states that defendants' counsel reviewed the secretary's computation of the 15-day time limit set by Rule 52(b) and agreed with her that the last day to file the motion was November 9. Counsel also avers that the preparation of the motion was assigned to an associate of the firm, that the motion was prepared, and that on November 9 defendants' lawyer "flew to Phoenix to file said motion and hand deliver copies to minimize the time necessary for appeal, if required." Finally, the affidavit states that, on November 24 (eight days after the City responded to the motion and the day after the time for appeal had expired), an assistant city attorney called him to "disclose" that the motion should have been filed on November 6, and that it was untimely and had not extended the time for appeal, which had "now expired." The affidavit contains a clear averment that defense counsel believed that the date stamped "Received: Oct 24" was the date on which judgment was filed[5] and that he neither realized that the judgment had been filed and entered on October 22 nor that the October 24 date was simply the date on which the mail room had received the minute entry copy to be mailed to counsel.

In attempting to support the trial court's presumed exercise of discretion, the court of appeals asserted that the order was not really ambiguous, because it was dated Oc-

---

**4.** In affirming, the court of appeals evidently considered these principles compelling. (Slip op. at 6.)

**5.** Filing the judgment with the clerk "constitutes entry of such judgment." Rule 58.

tober 22. The court stated, further, that even if it was ambiguous, defense counsel could have clarified the date by "calling the clerk's office," by consulting his own file to determine the full text of the stamped notation on other minute entries in the file, or by calling the clerk of court "and ask[ing] what the stamp said." He did none of these things. (Slip op. at 9, 12, 13.) All of this, though indisputably true, misses the mark. If defense counsel had been in doubt as to the date on which the order was entered, he would have been inexcusably negligent in failing to do any one of a number of things which might have resolved the confusion. The problem with this line of reasoning is that counsel had no doubt as to the date on which the judgment was entered. Because of his mistake as to the date of filing, he had carefully but erroneously computed the time in which to file the motion. Counsel's failure to consult his file or call the clerk to find the date of filing was the result of the mistake, not its cause. Thus, we do not believe that denial of relief under Rule 60 can be based upon the arguments made by the court of appeals.

If we consider first the question of relief under Rule 60(c)(1) (which requires the showing of mistake, inadvertence, or excusable neglect), we find much that tends to establish the grounds described in the rule. First, the order was erroneously signed by the judge before the five-day period had expired after lodging. It was not mailed by the courtroom clerk but rather by the mail distribution center. Mailing was not "immediate," as required by Rule 77(g),[6] so counsel did not receive a copy of the order until October 28, six days after it was entered. What he did receive contained a mail distribution stamp used in only one county. That stamp was only partially legible, and the words which would have identified the October 24 date were not legible at all. Counsel read the order, erroneously assumed that the words "Received: Oct 24" meant the date on which the clerk had received and entered the judgment, and very carefully computed and entered erroneous dates on his office calendar. From that point forward, counsel was extremely diligent in all that he did. He prepared the motion to alter and amend on time, took it to Phoenix by air, hand-delivered it so that it would be timely filed, and promptly delivered copies to opposing counsel. Either intentionally or unintentionally, the City neglected to inform defense counsel that the motion was untimely. If it had informed counsel earlier, he could have filed notice of appeal within 30 days from October 22. Instead, the City waited until November 24 to deliver the news by telephone, followed by a motion to quash. Once he learned of his predicament, defense counsel promptly took action, filed multiple motions, and at every step acted in a prompt and diligent manner.

The standard for determining whether conduct is "excusable" is whether the neglect or inadvertence is such as might be the act of a reasonably prudent person under the same circumstances. *Co-*

---

6. The Superior Court of Maricopa County is the only superior court to use a central mail distribution system. In all other counties, including Pima County, where the offices of the Geylers' attorneys are located, minute entry orders are typed by the court clerk of the judge making the order and are mailed by that judge's staff. In Maricopa County the orders are prepared by the judge's staff and sent to the mail distribution center for mailing. No local rule provides for this system. Rule 77(g) provides that the "clerk [of court] shall mail copies of all minute entries to all parties." We assume that the employees in the mail distribution center are deputy clerks. The rule also requires that notice of entry of judgment be sent "immediately upon the entry" of the judgment. The order in question was filed on Thursday, October 22, evidently received by the mail center on Saturday, October 24, and mailed on Monday, October 26. We do not believe this fulfills the requirement of immediacy. The rules set fairly short deadlines for action by counsel after judgment has been entered. Important rights of litigants may be lost if appropriate post-judgment proceedings are not timely commenced. Except by a trip to the courthouse to look for the judgment and inspect the date stamp or the docket book, counsel has no method of determining the date on which a judgment was signed and entered. Therefore, Rule 77(g) requires that notice be given "immediately." We urge superior court clerks to use greater caution to observe this rule.

*conino Pulp v. Marvin*, 83 Ariz. at 120, 317 P.2d at 552. Many cases have been decided since *Coconino Pulp,* and we do not intend to review them all. We recently indicated that clerical and secretarial errors in office procedures are "unavoidable and ... [often] excusable." *Daou v. Harris*, 139 Ariz. 353, 360, 678 P.2d 934, 941 (1984). We noted again that the "test of what is excusable is whether the neglect or inadvertence" is of the type that might be "the act of a reasonably prudent person." *Id.* at 359, 678 P.2d at 940. If there is a trend in the Rule 60(c)(1) cases and those decided under the identical federal rule, it is that diligence is the final arbiter of whether mistake or neglect is excusable. *Rodgers v. Watt*, 722 F.2d at 459–60; *see generally Daou v. Harris, supra; Smith v. Jackson Tool and Die*, 426 F.2d 5 (5th Cir.1970); Calkins, *The Emerging Due Diligence Standard for Filing Delayed Notice of Appeal in Federal Courts*, 19 Willamette L.J. 609 (1983).

 The facts of this case strongly suggest that the mistake or neglect which led to the late filing of the motion to alter or amend and the failure to file the notice of appeal, was the type of clerical error which might be made by a reasonably prudent person who attempted to handle the matter in a prompt and diligent fashion. *Coconino Pulp v. Marvin, supra; Daou v. Harris, supra.* Relief under Rule 60(c)(1) would be appropriate in the usual default situation. The excusability of the moving party's conduct is also of weight in determining whether relief would be appropriate under 60(c)(6). *Webb v. Erickson*, 134 Ariz. 182, 188, 655 P.2d 6, 12 (1982). In addition to excusability of the failure to file, there are other circumstances, such as the City's failure to inform counsel of the untimeliness of the motion, which might require relief from a default under the "any other reason" standard of subsection (6). *Id.* at 188–89, 656 P.2d at 12–13.

## ANALYSIS OF THE FACTS UNDER *RODGERS* AND *PARK*

We turn, then, to the four-part *Rodgers v. Watt* analysis (*see ante* at 1077) to deter-mine whether to grant relief to permit delayed appeal. The first factor, absence of notice, is satisfied by the facts in this case. As in *Park v. Strick,* here there was more than a mere failure to receive the notice required by Rule 77(g). In *Park* there was a lack of notice, while in the case at bench there was late and confusing notice resulting in an error in calendaring the time for filing. The result is the same—counsel was unaware of the date on which the judgment was entered. The second factor we consider is the question of prejudice to the opposing party. Here, the motion to alter or amend was late by one working day. If it were not for the City's failure to give prompt notice of untimeliness in filing the motion, the notice of appeal would presumably have been timely filed. The parties have been litigating for over five years; it is difficult to imagine how a short delay in appeal time could have been prejudicial to the City. Third, defense counsel acted promptly after learning of the error. The fourth and last factor deals with the issue of whether counsel displayed due diligence or a "reason for lack thereof," *Rodgers v. Watt, supra,* in attempting to learn the date of entry of judgment. Here, while counsel did not attempt to learn the date of entry of judgment, the reason for his failure to do so was the erroneous interpretation of the order and resulting mistake in computing time.

 Thus, as in *Park v. Strick, supra,* there is more than counsel's mere failure to learn of the entry of judgment or failure of the clerk to comply with the requirement of giving Rule 77(d) notice. The circumstances are quite unique and compelling. Counsel did make a mistake, but so do we all. The purpose of the rule is to provide relief for those mistakes and errors which inevitably occur despite diligent efforts to comply with the rules. Here, the record shows counsel's diligent attention to business, and consistent, careful attempt to comply with the rules in a prompt and efficient manner. We consider these circumstances of paramount impor-

tance under Rule 60(c) both for purposes of relief from default judgments as well as under the delayed appeal analysis.

▇ In affirming the trial court, the court of appeals relied upon the decision of a Ninth Circuit panel in *Rodgers v. Watt,* 34 Fed.R.Serv.2d 683 (Callaghan) (1982), applying a strict standard for delayed appeal and requiring a showing which "should rarely be found." *Id.* (quoting *Hensley v. Chesapeake Northern Railway,* 651 F.2d 226, 230 (4th Cir.1981)). One of the few situations in which the *Rodgers* panel indicated that relief would be granted was where the failure to file the notice of appeal resulted from reliance upon affirmative representations or findings of the court or opposing parties. This panel's decision was withdrawn for amendment (after the decision of our court of appeals) and was replaced by the en banc decision which we have cited throughout this opinion. While we believe that the circumstances warranting delayed appeal should be "extraordinary," "unique," or "compelling," *Park v. Strick, supra,* we do not believe the standards should be as rigid as indicated in the original *Rodgers* decision.

▇ The comments made in connection with our recitation of the facts indicate our conclusions with regard to counsel's conduct. If we were the finders of fact, we would find the mistake excusable, counsel diligent, the *Rodgers* and *Park* standards satisfied, and relief appropriate. However, the trial court may have opinions about credibility or other matters which we do not share, but to which we give deference. We remand to the trial court to determine whether the circumstances were so "extraordinary," "unique," or "compelling" as to justify relief under Rule 60(c)(1) or (6) for the sole purpose of allowing defendants to take a delayed appeal. This decision should be made according to the standards set out *ante* at 1077. We assume that the trial court will indicate its findings on these issues by appropriate order, however brief.

The order of the trial court denying relief and the memorandum decision of the court

of appeals are both vacated, and the case is remanded for further action by the trial court.

GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

HOLOHAN, Chief Justice, dissenting.

The decision by the court in this case is somewhat unusual for two reasons. First, the trial judge is reversed for making the correct ruling on the motion which counsel filed; second, this court begins the practice of making advisory rulings.

The motion filed by counsel asked the trial court pursuant to Rule 60(c), Rules of Civil Procedure, 16 A.R.S., to clarify the minute entry dated October 22, 1981, and to rule nunc pro tunc that the final judgment was filed October 24, 1981.

The trial judge ruled that he had no jurisdiction to enter a nunc pro tunc order indicating that the order was signed the 24th when in fact the judgment was signed the 22nd. The majority agrees that the trial judge and the Court of Appeals were correct in holding that there is no authority to enter a nunc pro tunc order in a situation where the record correctly reflects what the court had actually done. Slip opinion, p. 7. Once the majority agreed that the trial court's ruling was correct, I would have thought that the matter was resolved, but the court proceeds to write a new motion for counsel and decide the case on the new motion.

The case has now turned on determining whether the trial judge correctly ruled on this court's motion.

Taking the motion as construed by this court, I agree with the Court of Appeals, and what is implicit in the trial court's ruling, that the minute entry is not ambiguous, and any confusion suffered by counsel could have been remedied by a minimum of effort such as a phone call to the clerk's office.

Departing from our previous practice of not making advisory rulings, the majority offers their view that "the record shows

**334**

counsel's diligent attention to business, and consistent, careful attempt to comply with the rules in a prompt and efficient manner." Slip opinion, p. 17. If counsel was as diligent as the majority indicates, this case would never be in the situation that it is.

As a parting note the majority nobly defers to whatever decision the trial judge makes on remand, but the majority would find "the mistake excusable, counsel diligent, the *Rodgers* and *Park* standards satisfied, and relief appropriate." Slip opinion, p. 18.

I dissent from the decision of the majority, especially the attempt to turn negligence and poor practice into diligence and efficiency.