211 P.3d 1267

**STATE of Arizona ex rel. INDUSTRIAL COMMISSION of Arizona, Plaintiff/Judgment Creditor/Appellee,**

**v.**

**Tommy WORD dba Pacific Mechanical Service, Defendant/Judgment Debtor/Appellant.**

**No. 1 CA–CV 08–0218.**

Court of Appeals of Arizona, Division 1, Department B.

April 21, 2009.

Terry Goddard, Arizona Attorney General .By Miral A. Sigurani, Assistant Attorney General, Phoenix, Attorneys for Plaintiff/Judgment Credtior/Appellee.

Philip R. Wooten PC By Philip R. Wooten, Phoenix, Attorney for Defendant/Judgment Debtor/Appellant.

## OPINION

DOWNIE, Judge.

¶ 1 Tommy Word, dba Pacific Mechanical Service ("Word"), appeals the superior court's denial of his motion for relief from judgment pursuant to Rule 60(c), Arizona Rules of Civil Procedure. Resolution of this case turns on interpretation of Arizona Revised Statutes ("A.R.S.") section 23–907(E), a statute addressing the collection of judgments from employers who fail to maintain workers' compensation insurance for their employees. For the following reasons, we reverse the superior court's ruling and remand with instructions to grant Word's Rule 60(c) motion.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 In August 1991, Robert Ruehrmund was injured while working on a job for Word. Word did not have workers' compensation insurance. Pursuant to A.R.S. 23–907(B), in lieu of proceeding against Word in a civil action, Ruehrmund opted to apply for benefits through the statutorily-established "Special Fund" administered by the Industrial Commission of Arizona ("ICA" or "Commission").

¶ 3 On September 18, 1991, the Special Fund issued a "Notice of Determination Pursuant to A.R.S. 23–907(B)." The notice stated that Ruehrmund's claim had been accepted, though it did not establish the amount or type of benefits to be paid. The notice advised Word that he could request a hearing if he disagreed with the Commission's determination.

¶ 4 Word requested a hearing, which was held on January 22, 1992 before an administrative law judge ("ALJ"). Among other things, Word contended that Ruehrmund was an independent contractor and not his employee at the time of the injury.

¶ 5 On April 10, 1992, the ALJ issued a "Decision Upon Hearing and Findings and Award for Compensable Claim." The concluding portion of that document states:

AWARD

IT IS ORDERED AS FOLLOWS:

1. The caption is amended to show that the defendant employer is RHONDA & TOMMY WORD, husband and wife, dba Pacific Mechanical Service.

2. The applicant is awarded hospital, surgical and medical benefits as provided for by law from August 2, 1991 until his condition becomes medically stationary.

3. The applicant is awarded compensation benefits as provided for by law from August 2, 1991 until his condition becomes stationary.

The ALJ's ruling further stated that the award would become final unless a timely request for review were filed.

¶ 6 Word filed a request for review, which the ALJ denied. Word and his wife then filed a special action in this court. They argued that the ALJ erred in amending the caption at the time of hearing to add them individually as parties. *Word v. Indust. Comm'n of Ariz.*, 175 Ariz. 474, 476, 857 P.2d 1328, 1330 (App.1993). We held that the ALJ exceeded his authority in adding Mrs. Word as a party, but affirmed the AL J's decision in all other respects. *Id.*

¶ 7 On December 3, 1993, the ICA issued a document captioned "Continuing Award," listing payments that the Special Fund had made on Ruehrmund's claim between August 2, 1991 and November 29, 1993. This document states, in pertinent part:

Pursuant to ARS Section 23–907(C),[1] the non-insured employer in the above-captioned claim is hereby notified of their liability to the Special Fund of the Industrial Commission of Arizona as follows:

| | |
|---|---|
| Balance Forward | $ |
| Medical Benefits | $ 3,669.22 |
| Compensation Benefits | $14,264.86 |
| Permanent Benefits | $ |
| Death Benefits | $ |
| Benefits Total | $17,934.08 |
| Penalties | $ 1,793.41 |
| Employer Payments to ICA | $ |
| TOTAL | $19,727.49 |

The Industrial Commission of Arizona shall file a judgment for the amounts listed together with attorney's fees, interest, and costs to the extent permitted by law, with the clerk of the superior court and shall record such judgment as a lien with the county recorder. Be advised that this award is made only for the purpose of notifying the non-insured employer of its liability to the Special Fund.

The document further advised Word of his right to request a hearing if he disagreed "with the calculations set forth in this AWARD . . . ." It also stated that the "award" would become final if no timely hearing request were filed. Word did not request a hearing.

¶ 8 On May 20, 1994, the ICA issued a "Supplemental Continuing Award." Except for the title, dates, signature, and dollar amounts, this document is identical to the December 3, 1993 "Continuing Award" outlined in the preceding paragraph. It lists a "balance forward" of $17,934.08, medical benefits of $5,708.29, compensation benefits of $3,169.42, and penalties of $2,681.18, for a total of $29,492.97. The ICA issued a second "Supplemental Continuing Award" on March 9, 1998 in the same form. It reflects a balance forward of $26,811.79, medical benefits of $18,687.53, compensation benefits of $30,302.03, and penalties of $7,580.14, for a total of $83,381.49.

¶ 9 The ICA made its last payment to Ruehrmund on November 18, 1998. Almost two years later, on October 11, 2000, the Commission issued a document captioned "Final Award." The format mirrored the earlier "awards" and listed a balance forward of $75,801.35, medical benefits of $858.00, and penalties of $7,665.93, for a total of $84,325.28. The ICA filed this "Final Award" with the Clerk of the superior court on July 11, 2001 and recorded it with the county recorder on July 25, 2001. The ICA did not file or record any of the earlier "awards."[2] Almost six years later, in April 2007, the ICA obtained and served several writs of garnishment in an attempt to collect on the Final Award from Word.

¶ 10 In October 2007, Word filed a motion for relief from judgment pursuant to Rule 60(c). He argued that the ICA had no valid judgment to enforce because the eight-year

---

1. The employer notifications were sent to Word at a time when the relevant statutory provision was A.R.S. § 23–907(C). In 2003, the statute was amended, and subsection (C) became subsection (E). There was also an increase in the statutory penalties. In other relevant respects, the statute remained the same.

2. On February 1, 2002, the Commission issued a "Continuing Award" that reduced the balance owed by Word to $81,952.01. The ICA filed this award in the superior court on January 17, 2008.

limitations period set forth in A.R.S. § 23–907(E) had lapsed. By minute entry order dated January 7, 2008, the superior court denied Word's motion, finding that the limitations period began to run when the "Final Award" was issued on October 11, 2000 and not on the earlier dates advocated by Word. The court entered a formal, signed order on February 22, 2008. Word timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B), (C), and (E).

## DISCUSSION

¶ 11 We review a superior court order denying relief from judgment under Rule 60(c) for an abuse of discretion. *City of Phoenix v. Geyler*, 144 Ariz. 323, 328, 697 P.2d 1073, 1078 (1985). However, an abuse of discretion occurs if the trial court commits an error of law in exercising its discretion. *Fuentes v. Fuentes*, 209 Ariz. 51, 56, ¶ 23, 97 P.3d 876, 881 (App.2004). We consider issues of statutory interpretation *de novo*. *City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 178, ¶ 5, 181 P.3d 219, 225 (App.2008); *Johnson v. Johnson*, 195 Ariz. 389, 391, ¶ 9, 988 P.2d 621, 623 (App.1999).

### A.R.S. § 23–907(E)

¶ 12 This dispute hinges on interpretation of A.R.S. § 23–907(E), which reads:

> The employer shall be notified of the employer's liability to the special fund periodically and this notice shall include a ten per cent [sic] penalty of the amount expended by the special fund or a penalty of one thousand dollars, whichever is greater, plus interest on the amount expended and the penalty pursuant to § 44–1201. The payments made from the special fund pursuant to the award plus the penalty shall act as a judgment against the employer. The commission shall file the award in the office of the clerk of the superior court in any county in the state and such award shall be entered in the civil order book and judgment docket and when so filed and entered shall be a lien for eight years from the date of the award upon the property of the employer located in the county. Execution may issue thereon within eight

years in the same manner and with like effect as if the award were a judgment of the superior court.

¶ 13 When interpreting a statutory provision, courts look primarily to the statute's language and give effect to the statute's terms in accordance with their commonly accepted meanings. *State v. Reynolds*, 170 Ariz. 233, 234, 823 P.2d 681, 682 (1992). Where a statute's language is "clear and unambiguous, we apply it without resorting to other methods of statutory interpretation." *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994).

¶ 14 Breaking down A.R.S. § 23–907(E) into its operable components, we find the statutory rights and obligations to be clear and unambiguous. Specifically:

1. The ICA was required to notify Word "periodically" of the amount of his liability to the Special Fund, which increased over time as benefits were paid on Ruehrmund's claim. It is uncontested that the Commission complied with this requirement.

2. The employer notices had to include certain statutory penalties. The notices here complied.

3. The ICA was required[3] to file "the award" with the superior court Clerk. Such an award, when entered in the civil order book and judgment docket, becomes "a lien for eight years from the date of the award upon the property of the employer." Execution on that lien may issue "within eight years in the same manner and with like effect as if the award were a judgment of the superior court." We discuss this clause in more detail *infra*.

4. Payments made from the Special Fund pursuant to "the award" (plus penalties) "shall act as a judgment against the employer." We also analyze this provision below.

### The Commission Did Not File "the Award."

¶ 15 The Commission conceded below that, "[a]n Original Award was issued . . . on

---

**3.** The term "shall" is ordinarily interpreted as mandating the subsequently described action. *See In re Maricopa County Superior Court No.*

*MH 2003–000240*, 206 Ariz. 367, 369, 78 P.3d 1088, 1090 (App.2003).

April 10, 1992." As noted *supra,* however, the only document the ICA filed with the superior court clerk was the "Final Award" dated October 11, 2000. Notwithstanding its caption, this document was not an "award," as that term is defined by the legislature and Arizona case law. It did, however, qualify as one of the statutorily-required notices sent to employers periodically to advise them of their liability to the Special Fund.

¶ 16 Section 23–901(1) defines "Award" as "the finding or decision of an administrative law judge or the commission as to the amount of compensation or benefit due an injured employee." A.R.S. § 23–901(1). As Word correctly notes, "awards" adjudicate rights of injured workers. "Awards" are not synonymous with the statutory employer notices required by A.R.S. § 23–907(E). The latter are in the nature of accounting documents generated *after* payments have already been made pursuant to an existing award. Indeed, the introductory language of the "Final Award" (and the other so-called "awards") advises that the document is being sent for the purpose of notifying Word of his liability to the Special Fund. It is also significant that employers like Word may request a hearing only if they disagree with "the calculations" set forth in the statutory notices. By contrast, Word could contest not merely the mathematical accuracy of the original award, but also the underlying substantive decision.[4]

¶ 17 The Commission's reliance on *Meva Corp. v. Industrial Comm'n,* 15 Ariz.App. 20, 485 P.2d 844 (1971), is unpersuasive. Although this Court acknowledged the relative breadth of the term "award" in *Meva,* we recognized an important limitation. Specifi-

cally, we held that an "award" includes "[a]ny formal written document in a matter *adjudicating the right of a workman.*" 15 Ariz. App. at 24, 485 P.2d at 848 (emphasis added). The statutory notices at issue here did not adjudicate any rights of Ruehrmund, but merely summarized amounts that had already been paid on his claim.

¶ 18 Our interpretation is bolstered by the statutory language that "payments" made pursuant to "the award" act as a judgment against the employer. A.R.S. § 23–907(E). The statute speaks of "payments" made by the Special Fund in the plural, but uses the term "award" in the singular. It also contemplates payments made pursuant to a pre-existing award, not an "award" filed years after benefit payments cease.

¶ 19 Applying the clear language of the statute, we determine that the ICA must file "the award," which then acts as a lien on the employer's property.[5] Thereafter, as benefit payments are made, by operation of law, the amounts paid can be recouped as a judgment against the employer. This process is analogous to that created in A.R.S. § 25–503(I), dealing with child support orders, which provides:

> The right of a party entitled to receive support or the department to receive child support payments as provided in the court order vests as each installment falls due. *Each vested child support installment is enforceable as a final judgment by operation of law.*

(Emphasis added.)

¶ 20 If it chooses to do so, the ICA may begin enforcement proceedings against an employer immediately upon paying benefits on a claim. Prompt collection action is consistent with the legislative history of A.R.S.

---

4. At oral argument, counsel for the Commission suggested that Word could have requested a hearing to challenge more than "the calculations." The Commission's communications, however, do not say this. Additionally, the ICA cites no authority for this proposition. Moreover, the employer notices do not include any back-up documentation for "the calculations." Given the fact that an employer must request a hearing within 10 days if he disagrees with "the calculations," the notion that he can evaluate and contest substantive decisions in time to request a hearing strains credulity. Finally, it is significant that other "notices" and "awards" advised Word

that he could contest the Commission's "determination" by requesting a hearing within 30 days. A "determination" connotes substance, whereas the term "calculations" connotes mathematical accuracy.

5. Although we are not required to decide the question given the facts presented, if the ICA issues multiple true awards over the course of a claim, those awards could presumably be filed as entered, preserving the Commission's ability to seek reimbursement for the full amount of benefits paid.

§ 23–907. In considering 1977 amendments that provided for immediate benefit payments by the Special Fund versus waiting to see whether an employer would make full payment, the legislature considered the following testimony by the Commission:

> Mr. Budd of the Industrial Commission spoke in support of the bill. He said there are problems with uninsured employers operating in the state unlawfully and when an employee is injured his compensation is paid for out of the special fund of the Industrial Commission. He added that presently by the time the money is payable the employer is out of business and cannot be found and the special fund must make a payment without being able to recover its costs which is a tax upon the insurance carriers of the state.

Workmen's Compensation; Benefits; Special Fund Liability: Minutes of S.B. 1100 Before Comm. on Agriculture, Commerce and Labor, 33d Leg. 1st Sess. 10 (Ariz.1977).

¶ 21 Finally, a contrary interpretation of A.R.S. § 23–907(E) would allow the Commission to wait years or even decades before issuing a final "award," placing the eight year limitations period solely within the control of the ICA.[6] If the legislature intended such a result, we presume that it will amend the statute to so reflect.

## CONCLUSION[7]

¶ 22 Pursuant to A.R.S. § 23–907(E), the Commission must file "the award" to perfect its judgment rights. That did not occur here. As a result, the Commission has no valid judgment. The superior court should have granted Word's Rule 60(c) motion.

¶ 23 Word requests an award of attorneys' fees incurred on appeal pursuant to A.R.S. § 12–348. A.R.S. § 12–348(A)(1) provides that the court *shall* award fees to a party that prevails on the merits in a civil action brought by the state or a city, town or county. *See also MVC Const., Inc. v. Treadway,* 182 Ariz. 615, 898 P.2d 993 (App.1995) (the use of the words "shall award fees" in A.R.S. § 12–348(A), as well as the legislative history, indicate that the legislature intended to make such an award mandatory); *Columbia Parcar Corp. v. Ariz. Dep't of Transp.,* 193 Ariz. 181, 184, ¶ 19, 971 P.2d 1042, 1045 (App.1999) (there is a strong public policy in favor of awarding attorneys' fees to parties who are required to litigate against governmental entities and who ultimately succeed). Upon compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure, we award Word his costs and attorneys' fees (subject to the limitations in A.R.S. § 12–348(E)) incurred on appeal.

¶ 24 This matter is remanded to the superior court with instructions to grant Word's Rule 60(c) motion. The superior court shall also reconsider Word's request for attorneys' fees incurred in that court in light of the fact that he is now the prevailing party.

CONCURRING: JON W. THOMPSON, Presiding Judge, and DONN KESSLER, Judge.

---

6. In the case at bar, the Commission waited almost two years after the last benefit payment was made before issuing a "Final Award." Nine months later, it filed the "award," which lay dormant for almost six years until the ICA sought writs of garnishment.

7. Based on our determination that the ICA failed to perfect its judgment rights, we need not decide whether and how the Commission can renew its judgment rights.