NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SARAH B., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, K.J., *Appellees*.

No. 1 CA-JV 20-0146
FILED 12-8-2020

Appeal from the Superior Court in Yavapai County
No.   P1300JD202000019
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer PC, Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Thomas Jose
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Paul J. McMurdie joined.

---

**M O R S E**, Judge:

¶1        Sarah B. ("Mother") appeals the superior court's order terminating her parental rights to her daughter.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Mother has a history of substance abuse.  In April 2017, Mother gave birth to K.J., who was substance exposed to benzodiazepine, methadone, and opiates.  At that time, Mother admitted to using heroin and other prescription drugs.  Because of Mother's drug use, the Department of Child Safety ("DCS") took custody of K.J., placed her in a foster home, and filed a dependency petition.  DCS provided Mother with reunification services, and K.J. was returned to Mother's physical custody in March 2019.[1] Mother participated in in-home dependency services until the matter was closed in October 2019.

¶3        In December 2019, Mother overdosed, and first responders found fentanyl in her home.  In February 2020, police initiated a traffic stop on Mother and her friend.  Police found drug paraphernalia in the car, and Mother appeared under the influence as she had "pin point pupils, . . . would not stop talking and would not sit still."  K.J. was in the car at the time, and her car seat was not strapped in properly.  Mother admitted to the police that she had overdosed on substances three days prior, requiring friends "to use Narcan to bring her back to life."  DCS took custody of K.J. and filed a dependency petition. DCS also tested K.J.'s hair for substances, and the sample returned positive for methamphetamine.

---

[1]     The termination petition alleges that during this dependency, Mother was provided "a full range of family reunification services to address her substance abuse issues."  However, the evidence does not detail the dates or duration of the services offered, other than to confirm that Mother was offered some substance-abuse testing.

¶4　　　　In March 2020, Mother attended the preliminary protective hearing where she received notice that failing to appear at future hearings could result in a waiver of her right to contest the factual allegations in the termination motion and a loss of her parental rights. At that hearing, the superior court set a case plan of severance and adoption and scheduled the initial termination hearing. DCS offered Mother services, including substance-abuse testing, a substance-abuse assessment, an intake at a behavioral health clinic, and parenting classes. Mother did not participate in any services, save for two in-person visits with K.J. Once the coronavirus pandemic began, DCS offered Mother video or phone visits, but she did not participate.

¶5　　　　The week after the preliminary protective hearing, DCS moved to terminate Mother's parental rights to K.J. under the substance-abuse and prior-removal grounds. When Mother failed to appear at the initial termination hearing on March 31, the superior court found that she lacked good cause for her absence and proceeded to take evidence on the termination motion. After the hearing, the court made findings consistent with the termination of Mother's parental rights on the grounds alleged. Six days later, Mother moved "for [a] good cause finding," arguing she mistakenly believed the court was closed due to the pandemic. K.J.'s guardian ad litem and DCS both responded to Mother's motion.

¶6　　　　On April 22, the superior court issued an order terminating Mother's parental rights.[2] The next day, Mother appealed the termination order, and the superior court issued an order denying Mother's motion for good cause finding. On May 5, Mother appealed the court's order denying her motion. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶7　　　　A parent's right to custody and control of her child, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49, ¶¶ 11-12 (2000). Severance of a parental relationship may be

---

[2]　　　Although the order found Mother had received proper notice and service, it did not contain an explicit finding that Mother lacked good cause for her failure to appear. However, the parties did not raise the lack of findings as an issue on appeal. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 17 (App. 2004) ("[W]e will presume that the juvenile court made every finding necessary to support the severance order if reasonable evidence supports the order.").

warranted where the state proves one statutory ground under A.R.S. § 8-533 by "clear and convincing evidence." *Id.* "Clear and convincing" means the grounds for termination are "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284-85, ¶ 25 (2005). The court must also find that severance is in the child's best interest by a preponderance of the evidence. *Id.* at 284, ¶ 22.

**¶8** This Court "will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We do not reweigh the evidence but "look only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

## I. Good Cause.

**¶9** On appeal, Mother asserts that the superior court erred in finding she lacked good cause for her failure to appear at the initial termination hearing.[3]

**¶10** Arizona Rule of Procedure for the Juvenile Court 65(C)(6)(c) gives the superior court discretion to sever a parent's parental rights based on the record and evidence presented if

> the parent . . . had notice of the hearing, was properly served pursuant to Rule 64 and had been previously admonished regarding the consequences of failure to appear, including a warning that the hearing could go forward in the absence of the parent . . . and that failure to appear may constitute a waiver of rights and an admission to the allegations contained in the termination motion or petition . . . .

To set aside the superior court's finding, Mother must show both good cause for her absence from the initial termination hearing and a meritorious defense to the petition for termination. *Trisha A. v. Dep't of Child Safety*, 247

---

[3] The superior court issued its ruling on the same day that Mother filed her notice of appeal from the termination order. *See Aqua Mgmt., Inc. v. Abdeen*, 224 Ariz. 91, 93, ¶ 7 n.3 (App. 2010) ("A trial court loses jurisdiction once the appeal is filed, unless the matter is in furtherance of the appeal."). Neither party raises this issue, and we therefore presume the superior court's ruling is in furtherance of the appeal. Ariz. R.P. Juv. Ct. 103(F)(2).

Ariz. 84, 89, ¶ 19 (2019); *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 304, ¶ 16 (App. 2007). Good cause includes "mistake, inadvertence, surprise or excusable neglect," which exists if Mother's actions are those of "a reasonably prudent person in the same circumstances." *Christy A.*, 217 Ariz. at 304, ¶ 16. "[D]iligence is the final arbiter of whether mistake or neglect is excusable." *City of Phoenix v. Geyler*, 144 Ariz. 323, 332 (1985). A meritorious defense is "a good faith basis upon which to contend that the petitioner cannot prove a statutory basis for termination and/or that termination is not in the best interests of the child." *Christy A.*, 217 Ariz. at 304, ¶ 15 n.11. It "must be established by facts and cannot be established through conclusions, assumptions or affidavits based on other than personal knowledge." *Id.* at 304-05, ¶ 16.

¶11 Regarding good cause, Mother asserted that she was "uncertain as to whether or not her hearing would go forward" due to the pandemic. She then called and checked the Yavapai County Courthouse website, which was closed, rather than the Juvenile Justice Center, which remained open.

¶12 Although uncertainty is a reasonable response to the pandemic, Mother stopped short of taking reasonable actions to confirm whether her court hearing had indeed been canceled. She should have known the initial termination hearing location because she attended the preliminary protective hearing at the Juvenile Justice Center. There, she signed a "Form 3, Notice to Parent in Termination Action," which provided the date, time, and location of the initial termination hearing and warned Mother that if she failed to attend "without good cause, the [juvenile court] may determine that [she had] waived [her] legal rights and admitted the grounds alleged in the motion/petition for termination." Mother was also personally served the termination motion and the notice of hearing containing the same information.

¶13 Mother's counsel also attempted to secure Mother's presence at the hearing. Counsel texted Mother the day before the hearing to confirm that she was going to be there. Just before the hearing, counsel left Mother a voicemail and texted her the conference line telephone number so Mother could call into the hearing. A reasonable person would have confirmed the hearing's status through the documents received in the case or through counsel. Mother did not do so and, therefore, has not demonstrated good cause for her absence. Because Mother lacked good cause for her absence, we affirm and do not need to address whether she established a meritorious defense. *See Trisha A.*, 247 Ariz. at 89, ¶ 19.

## II.     Reasonable Efforts.

**¶14**     Mother argues that DCS did not provide her with the time or opportunity to participate in services.  When seeking termination under the substance abuse and prior removal grounds, DCS is required to make a reasonable effort to provide the parent with appropriate reunification services.  A.R.S. § 8-533(B)(11)(b); *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005).  DCS meets this obligation by providing the parent with "the time and opportunity to participate in programs designed to help her become an effective parent." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).  DCS is only obligated to provide services that have "a reasonable prospect of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999).

**¶15**     In the current dependency, DCS offered Mother substance-abuse testing and a substance-abuse assessment, which may have led to substance-abuse treatment.  DCS also asked Mother to complete an intake at a behavioral-health clinic and begin parenting classes.[4]     At the preliminary hearing, Mother agreed to the services offered but did not partake in any of them.  To be sure, Mother refused to engage in drug testing from the outset of the case, stating to DCS that she "completed enough negative [drug tests] in the previous dependency for [DCS] to know she is sober."  Further, Mother participated in only a few visits with K.J.

**¶16**     Mother argues she was not provided the time or opportunity to participate in reunification services in the current dependency because the court severed her parental rights so quickly.  However, Mother's failure to appear at the initial hearing truncated the time she had to participate in services.    Additionally, Mother was on notice from the preliminary protective hearing that the case plan was severance and adoption and that DCS would be filing a motion to terminate her parental rights within ten days of that hearing.  She was notified that "[f]ailure to participate in reunification services may result in the termination of [her] parental rights," but made no effort to seek out or participate in services, especially those designed to address her substance abuse — the main issue preventing reunification.    *Id.* (noting that DCS is not obligated to "undertake rehabilitative measures that are futile"); *JS-501904*, 180 Ariz. at 353 (stating that DCS is not required to ensure that parents participate in services offered).

---

[4]     DCS agreed to offer Mother individual counseling, but it is unclear whether DCS made that referral before Mother's rights were terminated.

### III. Substance-Abuse Ground.

¶17 Mother next argues that no reasonable evidence supports the court's finding that she could not discharge her parental responsibilities due to chronic substance abuse. Mother cites a lack of positive drug tests or police reports in the record.

¶18 The superior court may terminate a parent's parental rights when the parent cannot discharge parental responsibilities because of chronic abuse of dangerous drugs or controlled substances, and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period. A.R.S. § 8-533(B)(3). Substance abuse is chronic when it is long-lasting, but it need not be constant. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 16 (App. 2010). Accordingly, a parent's "temporary abstinence from drugs and alcohol does not outweigh [a] significant history of abuse or [a] consistent inability to abstain during [the] case." *Id.* at 379, ¶ 29. The juvenile court may consider a parent's prior substance abuse in evaluating whether it will continue for a prolonged indeterminate period. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 20 (App. 2016). "This evidence include[s] the length and frequency of Mother's substance abuse, the types of substances abused, behaviors associated with the substance abuse, prior efforts to maintain sobriety, and prior relapses." *Id.*

¶19 When Mother failed to appear without good cause at the initial termination hearing, she admitted the termination motion's factual allegations. Those allegations, along with the remaining record, constitute reasonable evidence supporting the court's findings under the substance-abuse ground.

¶20 The evidence demonstrates that Mother's substance abuse is chronic. She has abused substances for over three years. Indeed, K.J. was born substance exposed to opiates, methadone, and benzodiazepine. At K.J.'s birth, Mother acknowledged a lengthy history of heroin use. Due in part to Mother's substance abuse, K.J. was in DCS custody from April 2017 to March 2019. During that time, Mother submitted positive drug tests. Although Mother achieved some sobriety during late 2019, as evidenced by her regaining custody of K.J., it did not last.

¶21 Mother overdosed in December 2019, and first responders found fentanyl in her home. Mother claimed her overdose was due to her sister blowing fentanyl smoke in her face. Two months later, police conducted a traffic stop and noted several signs suggesting that Mother was

under the influence. Police found drug paraphernalia in the center console of the car.[5] During this encounter, Mother admitted to overdosing a few days prior, requiring friends "to use Narcan to bring her back to life." Despite this, Mother refused drug testing and did not complete a substance-abuse assessment, which could have assisted service providers in recommending treatment for her.

¶22 Reasonable evidence also supports the court's finding that Mother was unable to discharge her parental responsibilities. During the traffic stop in which Mother appeared under the influence, K.J. was in the car. Her car seat was not buckled in properly and was "loose enough to be taken out of the vehicle." Just after this incident, K.J. tested positive for methamphetamine.

¶23 Mother next argues the superior court impermissibly shifted the burden of proof to her because, after taking evidence at the initial termination hearing, the court stated that "there was no confirmation that mother has remedied her substance abuse issue." The court's statement was couched in its observation that Mother had not submitted to drug testing. Regardless, Mother's argument is not persuasive, and the court's statement is not part of its final, written order. *See Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 538, ¶ 18 (App. 2018) (noting that one purpose of written findings is to prompt judges to consider their decisions carefully); *United Cal. Bank*, 140 Ariz. at 308.

### IV. Best Interests.

¶24 Mother also challenges the superior court's finding that severance was in K.J.'s best interests. In addition to finding a statutory ground for termination, the superior court must determine by a preponderance of the evidence whether termination is in the child's best interests. *Kent K.*, 210 Ariz. at 284, ¶ 22. Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court proceeds to balance the unfit parent's "interest in the care and custody of his or her child . . . against the independent and often adverse interests of the child in a safe and stable

---

[5] Mother asserts that the court incorrectly stated at the hearing that police found drugs during the traffic stop. Mother is correct. However, the court's statement is not part of its final, written order, and we do not consider it. *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 308 (App. 1983) ("Appeals lie from findings of fact, conclusions of law, and judgments, not from ruminations of the trial judge.").

home life." *Id.* at 286, ¶ 35. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018).

**¶25**        Mother specifically argues that the court's finding is not supported by a preponderance of the evidence because DCS "made only a negligible effort to provide services to Mother for only a few short weeks before seeking" termination. Although the superior court must consider a parent's rehabilitation efforts as part of the best-interests analysis, it must not "subordinate the interests of the child to those of the parent once a determination of unfitness has been made." *Id.* at 151, ¶ 15. As discussed in Section II, Mother made almost no effort to seek out or participate in services, weighing against her in a best-interest analysis. Moreover, the superior court found that severance would further the adoption plan by providing K.J. with permanency and stability because she is in an adoptive placement who is meeting her needs. These findings are supported by reasonable evidence in the record.

## CONCLUSION

**¶26**        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA